Thomas Hector **BOHNERT,** Petitioner-Appellant,

v.

Brig. Gen. James **FAULKNER** and Stanley Resor, Secretary of the Army, Respondents-Appellees.

No. 20773.

United States Court of Appeals, Sixth Circuit.

Feb. 16, 1971.

Jerrold L. Becker, Louisville, Ky., for petitioner-appellant.

Kenneth J. Tuggle, Asst. U. S. Atty., Louisville, Ky., for respondents-appellees; George J. Long, U. S. Atty., Louisville, Ky., on brief.

Before CELEBREZZE, McCREE, and MILLER, Circuit Judges.

WILLIAM E. MILLER, Circuit Judge.

This appeal is taken from the denial of a writ of habeas corpus applied for to obtain appellant's discharge from the custody of the United States Army Reserve. Appellee Faulkner is the commanding officer of the 100th Division, United States Army Reserve. Appellant entered active duty as a reservist at Fort Bragg, North Carolina, on July 13, 1970. A motion to enjoin appellees from ordering appellant to active duty pending appeal was denied by this Court on November 2, 1970. The ground asserted for the writ of habeas corpus was that appellant was improperly denied recognition and discharge from the Army as a conscientious objector.

I

Appellant enlisted in the 100th Division, U. S. Army Reserve, Louisville, Kentucky, on March 29, 1969. Pursuant to regulations, AR 135–25 (April 11, 1969) appellant submitted an application for recognition and discharge as a Conscientious Objector to participation in war in any form (I–O) on October 8, 1969. A Conscientious Objector Review Board (hereinafter referred to as the Board) convened at Fort Benjamin Harrison, Indiana, on March 4, 1970, to consider the application after it was administratively complete. Having been informed by an officer of his unit that the application would soon be denied, appellant on May 20, 1970, filed a petition in the court below for a writ of habeas corpus on the ground that the denial of the discharge was unsupported by a basis in fact. On May 28, 1970, the Board formally notified the appellant that his application would be denied on the grounds that his beliefs were not sincerely held, that they were not founded on religious training and belief, and that his objection to war in any form was based on sociological, philosophical, or political views, or on a purely personal moral code. The petition for habeas corpus was denied by the District Court on August 7, 1970, on the ground that there was a basis in fact for the Board's decision and that there was no showing of arbitrary or capricious action in the administration of the application for discharge.

## II

Provision for the exemption of qualified conscientious objectors from the requirements of induction and military training is contained in section 6(j) of the Military Selective Service Act of 1967, 50 U.S.C.A. App. § 456(j).[1] While this provision is not applicable to persons after induction into military service, the Department of Defense has determined to recognize the national policy in such cases. In May, 1968, the Department directed the armed services to establish procedures for in-service administrative discharges of personnel who become conscientious objectors after entering military service and had never made a prior claim for recognition as such. Department of Defense Directive No. 1300.6 ¶ IV A, B(1) & (2) (May 10, 1968) (hereinafter cited as DoD No. 1300.6). The statutory standards of section 6(j) of the Act are cited as the basis for the discharge. DoD 1300.6 ¶ V. The regulations issued by the Department of the Army to govern in-service discharges of conscientious objectors are found in AR 135–25. Both the Defense Department Directive and the Army Regulations have been made a part of the record before the Court.

■■ At the outset we note that the writ of habeas corpus is the appropriate remedy for an inductee seeking discharge from the Army based on an improper classification by the Selective Service. Witmer v. United States, 348 U.S. 375, 377, 75 S.Ct. 392, 99 L.Ed. 428 (1955).

Habeas corpus has also been deemed the appropriate remedy for an enlistee who was denied an in-service discharge as a conscientious objector under the Directive and Regulations discussed above, and this Court has jurisdiction of an appeal from the denial of the writ. See, e. g., United States ex rel. Brooks v. Clifford, 409 F.2d 700 (4th Cir. 1969); Hammond v. Lenfest, 398 F.2d 705 (2d Cir. 1968). It is conceded by the parties that the law governing cases arising under the Military Selective Service Act is likewise the standard to be applied here. The instant case is thus analogous to that of a Selective Service registrant who submitted to induction and then challenged the validity of his classification by habeas corpus. E. g., Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946), United States v. Freeman, 388 F.2d 246 (7th Cir. 1967).

## III

With this general background in mind we turn to a consideration of the applicable law. The Military Selective Service Act of 1967 retains the provision of prior law dating to 1940 that classification decisions of a local Selective Service Board "shall be final, except where an appeal is authorized and is taken in accordance with such rules and regulations as the President may prescribe." 50 U.S.C.A. App. § 460(b) (3). The leading case interpreting the extent of finality granted such decisions created a narrow area of judicial review of Selective Service

1. (j) Nothing contained in this title shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. As used in this subsection, the term "religious training and belief" does not include essentially political, sociological, or philosophical views, or a merely personal moral code. Any person claiming exemption from combatant training and service because of such conscientious objections whose claim is sustained by the local board * * * or shall, if he is found to be conscientiously opposed to participation in such noncombatant service, in lieu of such induction, be ordered by his local board, subject to such regulations as the President may prescribe, to perform for a period equal to the period prescribed in section 4(b) such civilian work contributing to the maintenance of the national health, safety, or interest as the local board pursuant to Presidential regulations may deem appropriate and any such person who knowingly fails or neglects to obey any such order from his local board shall be deemed, for the purposes of section 12 of this title, to have knowingly failed or neglected to perform a duty required of him under this title.

classifications in the absence of express Congressional provision for judicial review. In Estep v. United States, *supra,* at 122, 66 S.Ct. at 427, the Supreme Court said of the statutory provisions for finality:

> \* \* \* Congress chose not to give administrative action under this Act the customary scope of judicial review which obtains under other statutes. It means that the courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant. (Citation and footnote omitted.)

■ The basis in fact test is applied when an inductee seeks release by means of habeas corpus, see United States v. Freeman, *supra;* Blalock v. United States, 247 F.2d 615 (4th Cir. 1957). The cases following *Estep* in reviewing classifications by the Selective Service and by armed service review boards are too numerous for citation.

■ It has been repeatedly held that the scope of review under the basis in fact test is one of the narrowest known to the law. Witmer v. United States, *supra,* 348 U.S. at 380–381, 75 S.Ct. 392; United States v. Washington, 392 F.2d 37 (6th Cir. 1968). In reviewing a classification under this test the courts are not to weigh the evidence nor judge its substantiality. In such cases they are not superboards. Witmer v. United States, *supra;* Clay v. United States, 397 F.2d 901, 916 (5th Cir. 1968).

■ ■ Although the scope of our review is limited to finding a basis in fact, it has been established beyond doubt that the validity of an administrative classification presents a question of law to the reviewing court. Cox v. United States, 332 U.S. 442, 448–449, 452–453,

68 S.Ct. 115, 92 L.Ed. 59 (1947); *accord,* United States v. Sears, 425 F.2d 231, 232 (5th Cir. 1970); United States v. Abbott, 425 F.2d 910, 914 (8th Cir. 1970); United States v. James, 417 F.2d 826, 830 n. 6 (4th Cir. 1969); Kidd v. United States, 386 F.2d 422, 423 (10th Cir. 1968); United States v. Petiach, 357 F.2d 171 (7th Cir. 1966). In making its review this Court may make an independent search of the administrative record for a basis in fact to support the Board's decision regardless of the findings of the District Court. See United States v. James, *supra;* United States v. McCullough, 413 F.2d 981, 982 (4th Cir. 1969); United States v. Simmons, 213 F.2d 901 (7th Cir. 1954), rev'd on other grounds, 348 U.S. 397, 75 S.Ct. 397, 99 L.Ed. 453 (1955). In deciding whether there was a basis in fact the Court may take into account possible errors by the Board in applying applicable law. See Robertson v. United States, 404 F.2d 1141 (5th Cir. 1968), rev'd on other grounds, 417 F.2d 440 (5th Cir. 1969) (rehearing en banc); Gatchell v. United States, 378 F.2d 287 (9th Cir. 1967).

■ As noted in *Estep, supra,* the basis in fact test entails an inquiry into the jurisdiction of the classifying agency; a board making a classification without any basis in fact to support it is acting beyond its jurisdiction. See Neal v. United States, 203 F.2d 111 (5th Cir. 1953), cert. denied, 345 U.S. 996, 73 S.Ct. 1138, 97 L.Ed. 1402 (1953). The Supreme Court has twice rendered some guidance on the requirement. Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953), held that more than mere suspicion or speculation was required to deny a registrant a deferment as an ordained minister of religion. Where the registrant has made a prima facie case of entitlement the courts must "search the record for some affirmative evidence to support the local board's overt or implicit finding that a registrant has not painted a complete or accurate picture of his activities. \* \* \* [T]he courts may properly insist that there be

some proof that is incompatible with the registrant's proof of exemption." 346 U.S. at 396, 74 S.Ct. at 157.

The Supreme Court has distinguished *Dickinson*, however, when the issue was not entitlement to a ministerial deferment but rather classification as a conscientious objector. In Witmer v. United States, *supra*, the Court stated that while a prima facie case for a ministerial deferment could be made out from objective facts, making the search for "incompatible evidence" appropriate, a conscientious objector claim requires a different quality of evidence.

> * * * In these cases, objective facts are relevant only insofar as they help in determining the sincerity of the registrant in his claimed belief, purely a subjective question. In conscientious objector cases, therefore, any fact which casts doubt on the veracity of the registrant is relevant. It is "affirmative evidence * * * that a registrant has not painted a complete or accurate picture * * *." Dickinson v. United States, supra, p. 396, 74 S.Ct. p. 157. In short, the nature of a registrant's prima facie case determines the type of evidence needed to rebut his claim. If the issue is the nature of his activities, as in Dickinson, the evidence providing "basis in fact" must tend to show that his activities are other than as stated. If, as here, the issue is the registrant's sincerity and good faith belief, then there must be some inference of insincerity or bad faith. 348 U.S. at 381–382, 75 S.Ct. 392.

This language is of some help in deciding the question of sincerity and will govern our consideration of that part of the Board's decision holding that appellant's beliefs were insincere.

### IV

Appellant attacks the judgment of the District Court on two grounds. First, he asserts that there was no basis in fact for any of the adverse findings of the Board. Secondly, he contends that the language of the Board's Memorandum of decision respecting appellant's documentation demonstrates a bias and prejudice on the part of the Board making a fair review impossible and amounting to a denial of due process of law.

We turn to a consideration of the first contention. The final order (judgment) of the District Court does not indicate what evidence in the administrative record satisfied the Court as to basis in fact. The Court stated only that the record was "replete with supporting evidence." We accordingly turn to the administrative record that was before the Board.

Appellant's letter accompanying his application sets forth a description of the nature of his beliefs: "* * * I am conscientiously opposed to war in any form. I base my stand on the grounds that it is totally incompatible with the command of love given to us by Jesus." After expanding on the meaning of his beliefs, appellant states that his primary, secondary, and college education had been in Catholic schools, and that his religious training has also been Roman Catholic. He indicates that in college he began to believe in the importance of obedience to conscience as expressed in certain writings of Vatican II and that his beliefs were developed chiefly through philosophy and theology courses he studied in college. He also cites several books and articles that appear to deal with religious, ethical and moral teachings on war by both clerics and laymen. Appellant then further explains that the extent of his beliefs precludes him from any noncombatant service because "The purpose of an army is to win victories. I cannot, in conscience, participate in any area of the armed forces because every part of the army is directed toward this goal."

There follows in the record five letters from relatives, teachers, friends and associates of the appellant all testifying to his honesty and sincerity and, to some extent, to the religious foundation of appellant's beliefs. Of more significance, however, are four letters from the military officers who interviewed appellant pursuant to AR 135–25. As these letters

are cited by the Board in its Memorandum, it is appropriate to review them here.

The first of these letters was from appellant's company commander, Lt. Horace L. White. Without making any judgment about appellant's sincerity, Lt. White recommended approval of appellant's discharge on the ground that his beliefs might affect the morale and decorum of his command. The second letter is from Lt. Col. Joseph B. Brill, who conducted a psychiatric examination of appellant and reported that appellant appeared to be sincere in his application.

The third letter is from Lt. Col. John E. Carter, the Chaplain in appellant's reserve unit in Louisville. The Chaplain, a Baptist minister, was of the opinion that appellant's "position as a conscientious objector is not rooted in his religious background, but is a position he arrived at in the past six months after joining USAR." After discussing his impressions of appellant's beliefs, he states: "These are vague concepts not supported by him with any acceptable interpretations of religious teachings or by logic and reason. However, he is sincere in them and, although misguided to a point of frustration, adamant in his adherence to them." The Chaplain then noted the fact that appellant enlisted shortly after his marriage and graduation from college. In summing up his view of appellant's beliefs as "illogical, inconsistent, contradictory and ambiguous," he states that appellant "is not susceptible to any other point-of-view and will not recognize any claim of higher authority over his time or conduct." The Chaplain concludes, however, by recommending the discharge.

The final interview was conducted by Lt. Col. James F. Kemp, Deputy Senior Adviser with the Judge Advocate General's Corps. Lt. Col. Kemp filed a lengthy report objectively setting out the factual context of appellant's application. He rendered no judgment on the correctness of appellant's theology but did find that some of his responses suggested "a reluctance and refusal * * * to think about problem situations and the sometimes difficult but real circumstances of life * * *." He concludes his remarks by stating that appellant "is sincere in his application * * *. The interview indicates that the basis for the application is a matter of conscience founded on * * * his understanding that the Christian ethic does not justify his taking of human life." Lt. Col. Kemp recommended the discharge.

In addition to these letters the file includes letters from two assistant adjutants who reviewed the file and also recommended the discharge.

In recommending that appellant's application be denied, the Board stated that it believed that appellant's "conscientious objector beliefs are not sincerely held; are not founded in religious training and beliefs; and any objection to war in any form he might truly hold is based solely on sociological experiences, philosophical views, and a personal moral code." Our review is limited to the issue of whether there is any basis in fact for any of these findings.

On the issue of appellant's sincerity there must be some inference of insincerity or bad faith to support the Board, "and [where there appears] no indication anywhere in the record that his demeanor appeared shifty or evasive or that his appearance was one of unreliability, we must examine the objective facts before the * * * Board to see whether they cast doubt on the sincerity of his claim." Witmer v. United States, *supra*, 348 U.S. at 382, 75 S.Ct. at 396. Nothing in the documentation considered by the Board and by the court below reveals any basis in fact to doubt the appellant's sincerity. The three military officers who interviewed appellant and made a judgment on this point all found that he was sincere. We note that some comment was made by Chaplain Carter about the timing of appellant's actions in that he enlisted shortly after marriage and graduation from college and then filed for discharge. While timing may in some cases be a relevant factor, see

United States ex rel. Tobias v. Laird, 413 F.2d 936 (4th Cir. 1969), where as here, the Department of Defense provides for in-service discharge for conscientious objectors and requires that such beliefs must have been acquired after the enlistee entered the service, the timing of the request for discharge supports no more than an inference insufficient alone to constitute a basis in fact for doubting sincerity. Dickinson v. United States, *supra*; United States v. Abbott, 425 F.2d 910, 914–915 (8th Cir. 1970); Bates v. Commander, 413 F.2d 475 (1st Cir. 1969).

Deciding whether appellant's beliefs are founded in religious training and belief involved the Board in an interpretation of law, primarily the standards laid down in United States v. Seeger, 380 U. S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965).[2] In *Seeger* the Supreme Court held that "religious training and beliefs" included

> \* \* \* all sincere religious beliefs which are based upon a power or being, or upon a faith, to which all else is subordinate or upon which all else is ultimately dependent. The test might be stated in these words: A sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by the God of those admittedly qualifying for the exemption comes within the statutory definition. This construction avoids imputing to Congress an intent to classify different religious beliefs, exempting some and excluding others, and is in accord with the well-established congressional policy of equal treatment for those whose opposition to service is grounded in their religious

tenets. 380 U.S. at 176, 85 S.Ct. at 859.

 The conscientious objector classification depends on the "subjective religious beliefs of the particular individual, not upon the religious tenets of an organization of which he is a member." Keefer v. United States, 313 F.2d 773, 776–777 (9th Cir. 1963); Gonzales v. United States, 212 F.2d 71 (6th Cir. 1954), rev'd on other grounds, 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467 (1955). No specific doctrinal support is required. United States v. Washington, 392 F.2d 37, 40 (6th Cir. 1968).

 Applying these standards we find that the Board had no basis in fact for its conclusion that appellant's beliefs were not founded in religious training and belief. The finding is unsupported by the factors stated by the Board or by any other evidence in the record. The Board found that appellant's "normal pattern of childhood Catholic training" did not preclude him from enlisting. We have already noted our view of the probative value of the timing of an enlistment followed by application for discharge. The Board further found that the Catholic Church does not teach or advocate conscientious objection as a basic theological belief. In this the Board may have been relying on the remarks of Chaplain Carter noted in part above. Appellant is entitled to be examined on the beliefs that he holds, however, without having to show doctrinal support in the teachings of his church. Appellant's statements that his beliefs flow from religious training and are religious in content are entitled to great weight. Seeger v. United States, *supra*. Moreover, as Chaplain Carter noted and the appellant

2. In the briefs and in oral argument there was some discussion of whether the Court should apply the later case of Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970), in which the Supreme Court clarified the *Seeger* test insofar as it applies to a person holding conscientious beliefs that are not based on traditional religious concepts or belief in God. The Government contends that *Welsh* constitutes an expansion of the definition in *Seeger* which should not be applied by the Court in cases arising under DoD 1300.6 since the Defense Department has adopted the *Seeger* test and has not acquiesced in *Welsh*. Because appellant's beliefs are asserted to derive from a traditional Catholic milieu and Christian theology, we need not decide whether the *Seeger* test has been expanded by *Welsh* or the applicability of the latter case in this proceeding.

stressed in his interviews and letter, the Catholic Church permits its members to hold such beliefs in obedience to conscience.

The Board also cites qualifications made by appellant on his objections to the use of force as inconsistent with the beliefs of a true pacifist. The statement referred to began: "I believe in the use of force when it does not conflict with the ethic set forth by Christ. Any time an act of force disregards the dignity of any person that force becomes violent and violates Christ's teaching." We do not find that this statement is in fundamental conflict with appellant's position. See Silberberg v. Willis, 420 F. 2d 662, 664 n. 1 (1st Cir. 1970). We cannot conclude that there was a basis in fact for the finding of the Board that appellant's beliefs were not based on religious training and beliefs within the definition of *Seeger*.

 Finally, the Board states that appellant's beliefs were founded solely on sociological experiences, philosophical views, and a personal moral code. As evidence, the Board cites the fact that appellant studied a number of philosophy and "quasi-religious courses" and read books ranging from "bona fide religious books to those containing a pure philosophical/sociological/political theme." We think that these statements indicate that the Board took a parochial view of religion and religious training inconsistent with the requirements of *Seeger*. Furthermore "before a conscientious objector classification may be denied on the ground that the appellant's beliefs are based upon 'political, sociological and philosophical' views or a merely personal moral code, those factors must be the *sole* basis of his claim for the classification." Packard v. Rollins, 422 F.2d 525 (8th Cir. 1970). Since we have found that appellant's views are founded in re-

ligious training and beliefs within the standards of *Seeger*, we find that evidence of some secular moral or ethical teaching and reading does not disqualify appellant from the claimed exemption. See United States ex rel. Brooks v. Clifford, *supra*, 409 F.2d at 708. In short it is clear to us that such non-religious views that the appellant may hold are not the sole basis for his claim. There is no basis in fact for the finding of the Board to the contrary.

After examining the entire record we are unable to find any basis in fact for denying appellant recognition as a conscientious objector under the Defense Department Directive and the Army Regulations. Because of our disposition of this issue, we need not consider appellant's contention that he was denied a fair review because of alleged prejudice on the part of the Board.

Having determined that appellant is entitled to be recognized as a conscientious objector (I–O), the question remains whether the Court can compel a discharge. The Army Regulations, AR 135–25, are unclear in this regard.[3] In a similar case, the provisions of DoD No. 1300.6 have been accepted as controlling where the Army Regulations are ambiguous. Silberberg v. Willis, *supra*, 420 F.2d at 666. The Directive provides in part:

1. Persons determined by a Military Department (whether or not such a determination was based on a recommendation by the Selective Service System) to meet the criteria for 1–O classification will normally be discharged "For the convenience of the Government."

 a. Conscientious objection will be specifically cited in the discharge document as the supporting reason when that is the sole reason for

3. AR 135–25 provides:
"When authorized by Headquarters, Department of the Army, individuals who have been determined to be bona fide conscientious objectors with classification 1–O will be discharged for the convenience of the Government * * *." ¶ 9(a).

discharge, to avoid possible future confusion.

b. Pending separation, the person will continue to be assigned duties providing the minimum practicable conflict with his professed beliefs and will be required to maintain the same standards of performance and behavior as other personnel assigned to his unit.

2. Persons (volunteers and inductees) with less than one hundred and eighty (180) days' service who are determined to be bona fide conscientious objectors (1–O classification) and whose request for separation is made early enough so that discharge will occur prior to completion of one hundred and eighty (180) days' active duty will be separated (for the convenience of the Government by reason of conscientious objection) early enough to permit the remaining service in the civilian work program administered by Selective Service. In such cases, the Selective Service System will be promptly notified of the date of discharge from the military Service, the fact that the individual has not completed one hundred eighty (180) days' active duty, and will be requested to induct·the individuals

for the alternate service provided by the MSS Act (reference (c)). DoD 1300.6 ¶ VI C(1) (2).

 The Board here did not base its denial on military necessity or abnormal circumstances but rather on "groundless doubts about appellant's sincerity and the religious nature of his beliefs," Silberberg v. Willis, *supra,* the sort of situation in which the court in *Silberberg* felt that discharge was appropriate. On the basis of the record before us we decide that appellant is entitled to a discharge.

It is unclear from the record whether appellant has served less than 180 days of active duty so as to come within the provisions of DoD 1300.6 ¶ VI C(2) supra, for the purpose of assignment to a civilian work program, or whether appellant has served more than 180 days so that no reassignment to civilian work is required. Accordingly the judgment of the District Court denying the writ of habeas corpus is reversed, and the case is remanded for entry of judgment requiring that the Army grant appellant a conscientious objector status, (I–O) and discharge, with or without reassignment to civilian work pursuant to DoD 1300.6 and AR 135–25 as the facts may warrant.[4]

Reversed and remanded with directions.

---

4. We have considered the possibility of remanding the action to the District Court in order that the witnesses might be observed by the District Judge and in order that he may assess the evidence at first hand. However, since the question at issue on judicial review is whether the Board had a basis in fact for its determinations, in light of the standards of *Seeger,* and since that issue is basically one of law to be determined from the record that was before the Board, we decline to remand for an evidentiary hearing. In this connection compare Keefer v. United States, 313 F.2d 773 (9th Cir. 1963); United States v. Pomorski, 125 F.Supp. 68 (W.D.Mich.1954), aff'd, 222 F.2d 106 (6th Cir. 1955), cert. denied, 350 U.S. 841, 76 S.Ct. 81, 100 L.Ed. 750 (1955); United States v. Ruppell, 278 F. Supp. 287 (E.D.N.Y.1968); United States v. Wider, 119 F.Supp. 676 (E.D.N.Y. 1954); United States ex rel. Lawrence v. Commanding Officer, etc., 58 F.Supp. 940 (D.Neb.1945).