John Russell McALILEY, Petitioner-Appellant,

v.

Brig. General William H. BIRDSONG, Jr., Commanding General United States Armed Forces, Fort Campbell, Kentucky, Respondent-Appellee.

No. 71-1352.

United States Court of Appeals, Sixth Circuit.

Dec. 6, 1971.

William H. Allison, Jr., Louisville, Ky., for appellant.

James H. Barr, Asst. U. S. Atty., Louisville, Ky., George J. Long, U. S. Atty., Louisville, Ky., on brief, for appellee.

Before WEICK, EDWARDS and CELEBREZZE, Circuit Judges.

CELEBREZZE, Circuit Judge.

This is an appeal from the denial of a petition for a writ of habeas corpus to obtain Appellant McAliley's release from the allegedly unlawful custody of the United States Army. Appellee Birdsong is the Commanding General at Fort Campbell, Kentucky, where McAliley was stationed when he petitioned the District Court. In his petition for a writ of habeas corpus before the District Court, McAliley challenged the validity of his local draft board's denial of his preinduction application for a consci-

entious objector classification, and he thus asserted that he was unlawfully inducted into the Army. The District Court denied McAliley's petition without issuing an order to show cause and without conducting an evidentiary hearing.

For the reasons set forth below, we reverse and remand the case to the District Court.

## I.

On September 21, 1971, after the District Court's final order denying McAliley's petition for a writ of habeas corpus, but fifteen days before oral arguments on this appeal were set to be heard by this Court, McAliley received an "undesirable discharge". We therefore face the initial question of whether the fact that McAliley is no longer in the Army's custody renders the present appeal moot and unreviewable by this Court.

Although the federal habeas corpus statute expressly requires that the petitioner be in custody, 28 U.S.C. § 2241(c), in Carafas v. LaVallee, 391 U. S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968), the United States Supreme Court has ruled that "once the federal jurisdiction has attached in the District Court, it is not defeated by the release of the petitioner prior to completion of proceedings on such application." 391 U.S. 238, 88 S.Ct. 1560. In Carafas, the petitioner's sentence under a state court conviction expired after the District Court had denied the petition for a writ of habeas corpus and after the Court of Appeals for the Second Circuit had affirmed that denial but before the petitioner sought a writ of certiorari from the Supreme Court. Despite the fact that the petitioner was no longer under any form of state custody, the Supreme Court held that his cause was not moot:

"In consequence of his conviction, he cannot engage in certain businesses; he cannot serve as an official of a labor union for a specified period of time; he cannot vote in any election held in New York State; he cannot serve as a juror. Because of these 'disabilities or burdens [which] may flow from' petitioner's conviction, he has 'a substantial stake in the judgment of conviction which survives the satisfaction of the sentence imposed on him.' Fiswick v. United States, 329 U.S. 211, 222 [67 S.Ct. 224, 230, 91 L.Ed. 196] (1946). On account of these 'collateral consequences,' the case is not moot. Ginsberg v. New York, 390 U.S. 629, 633–34, n. 2 [88 S.Ct. 1274, 1277–1278, 20 L.Ed.2d 195] (1968); Fiswick v. United States, supra, at 222, n. 10 [67 S.Ct. at 230]; United States v. Morgan, 346 U.S. 502, 512–13 [74 S.Ct. 247, 253, 98 L.Ed. 248] (1954)." 391 U.S. at 237–38, 88 S.Ct. at 1559 (footnotes omitted).

The Carafas Court further observed that release from custody is not the sole remedy available through a writ of habeas corpus; rather, the federal habeas corpus statute provides that the court shall "dispose of the matter as law and justice require." 28 U.S.C. § 2243; see 391 U.S. at 239, 88 S.Ct. at 1560.

That such "collateral consequences" may accompany and persist after a dishonorable discharge from the Armed Forces following court-martial convictions was clearly suggested by the Supreme Court in Brown v. Resor, 393 U. S. 10, 89 S.Ct. 51, 21 L.Ed.2d 23 (1968). There the petitioners had refused to participate in combat training after their requests for conscientious objector discharges were denied by Army officials. Both men were serving at hard labor when they petitioned the District Court for writs of habeas corpus. The petitions were denied, and the petitioners appealed. The Court of Appeals for the Fifth Circuit dismissed their appeals as moot because the men had by then been released from the Army under dishonorable discharges. Brown v. Reaves, 388 F.2d 682 (5th Cir. 1968). The Supreme Court vacated the judgment of the Court of Appeals and remanded for further consideration in light of Carafas v. LaVallee, supra. Brown v. Resor, su-

*pra,* 393 U.S. at 10, 89 S.Ct. 51. On remand, the Court of Appeals found that the case was not moot:

> "We entertain no doubt that the 'collateral consequences' which may flow from appellants' convictions and to which we alluded in our original opinion, i. e., that 'in many states they will not be able to vote, sit on juries or run for public office,' bring this case squarely within the principles enunciated in *Carafas*." Brown v. Resor, 407 F.2d 281, 283 (5th Cir. 1969).

We believe that the rule set forth in *Carafas* and applied in *Brown* is fully applicable to the present case, notwithstanding the fact that those cases involved the "collateral consequences" flowing from actual convictions whereas McAliley simply received an undesirable discharge without any conviction. Although the disabilities which result from an actual conviction in a civilian or military court may be more pronounced than those accruing with an undesirable discharge from the Army, it is common knowledge that a discharge which is "other than honorable," as expressly stated on McAliley's discharge certificate, can seriously jeopardize an individual's prospects for future employment as well as his general reputation. This is especially true in the instant case, where McAliley's discharge certificate reveals none of the circumstances surrounding his undesirable discharge, but merely states that he was discharged "for the good of the service." We therefore find that McAliley's undesirable discharge carries with it serious "collateral consequences" which, under the *Carafas* case, require us to hold that his cause is not moot.

## II.

Turning to the merits of the appeal, in his petition for a writ of habeas corpus in the District Court McAliley reviewed his local draft board's denial of his request for conscientious objector status, the Alabama State Appeals Board's affirmance of that denial, and his subsequent induction into the Army. His petition alleged in part

> ". . . that there was no basis in fact for the Selective Service officials to refuse to classify him a conscientious objector, that the local board applied an erroneous standard of law in determining whether petitioner was a conscientious objector. The local board gave no reasons for denying petitioner the requested classification and did not inform him of any reasons."

These allegations were accompanied by letters from McAliley's mother and adult friends which had been sent to his local board in support of the sincerity of his beliefs, his conscientious objector application form which he had submitted to his local board, and the statement by the local board denying McAliley's application for conscientious objector status. Significantly, the statement by the local board set forth the following as the only apparent basis for the board's denial of McAliley's application:

> "It is the opinion of the board that the above-named registrant working as a Merchant Seaman and carrying supplies overseas he has no grounds for a 1–O classification as a conscientious objector."

With the above allegations and exhibits before it in support of McAliley's petition for a writ of habeas corpus, the District Court denied the petition without issuing an order directing the respondent-appellee to show cause why the writ should not be granted and without conducting an evidentiary hearing on McAliley's claim for relief. The District Court based its summary denial of the petition on its finding that

> ". . . the petitioner repeatedly states conclusions of law without supporting these conclusions with the facts."

The District Court thus found that McAliley was entitled to neither the requested writ nor an evidentiary hearing due to the deficiency in factual allega-

tions in his petition.[1] We disagree with that finding.

In its order denying McAliley's petition, the District Court relied on this Court's decisions in Loum v. Underwood, 262 F.2d 866 (6th Cir. 1959), and Reams v. Davis, 333 F.2d 430 (6th Cir. 1964). In *Loum,* this Court upheld the District Court's denial of the petitioner's application to proceed in forma pauperis where the petition for a writ of habeas corpus was without legal merit. There the petitioner had merely asserted that he was being illegally held in the Ohio State Penitentiary in violation of his constitutional rights, and he had supported this statement in his petition with allegations in his brief to the effect that since he was originally sentenced to the Ohio Reformatory, his subsequent transfer to the Penitentiary because he had a previous felony conviction was illegal. In *Reams,* this Court affirmed the District Court's denial of a petition for a writ of habeas corpus without an evidentiary hearing where the petitioner merely claimed that his arrest had been illegal and that he had been forced to enter a plea of guilty to avoid the death sentence, without alleging facts in support of these claims.

██ In contrast to the deficiencies in the *Loum* and *Reams* petitions, we believe that McAliley's petition before the District Court alleged facts sufficient to warrant the issuance of an order to show cause and an evidentiary hearing. We refer specifically to McAliley's allegation in his petition that "[t]he local board gave no reason for denying [him] the requested classification and did not inform him of any reasons." In United States v. O'Bryan, 450 F.2d 365 (6th Cir. 1971), this Court recently reviewed the requirement that a local draft board articulate its reasons for a denial of conscientious objector status:

"[The] statement [of the local board] must set forth a 'rational basis' for its determination. . . .

Although not accepted unanimously by the circuits, the requirement that a local board articulate its reasons for denial of conscientious objector status has been accepted with reasoned accord. . . .

We are convinced that, absent a statement of reasons from the local board in the registrant's selective service file, a court cannot properly perform the function of review set forth in [Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946)]. . . . By the same token, a reviewing court faced with a silent file may only speculate as to what factors motivated a given determination. . . . Unless it is known which ground among the many upon which the board may have relied, it is often impossible to perform the function of review even within the narrow scope of the selective service context." 450 F.2d at 370–371 (footnote omitted).

In United States v. Washington, 392 F. 2d 37 (6th Cir. 1968), this Court similarly stated that in conscientious objector cases, where the sincerity of the applicant's beliefs is at issue, "the record must contain some statement of [the board's] disbelief if the classification is to be upheld upon judicial review." 392 F.2d at 39. And the Court of Appeals for the Ninth Circuit in United States v. Haughton, 413 F.2d 736 (1969), stated that

"[t]he local board . . . must state the reasons for its denial of a requested classification when a regis-

1. The federal habeas corpus statute requires that an application for a writ of habeas corpus "shall allege the facts concerning the applicant's commitment or detention * * *." 28 U.S.C. § 2242. And 28 U.S.C. § 2243 provides that in entertaining an application for a writ of habeas corpus, the District Court "shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto."

trant has 'met the statutory criteria' for that classification or . . . has placed himself 'prima facie within the statutory exemption.'" 413 F.2d at 739 (cites omitted).

The requirement that a local board state the reasons for its denial of conscientious objector status is a necessary element of the "basis in fact" test for judicial review, under which federal courts are empowered to review selective service classifications to insure that determinations by local boards are supported by some basis in fact. *See* Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946); Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955); Bohnert v. Faulkner, 438 F.2d 747 (6th Cir. 1971). Absent a statement of the local board's reasons for a given classification, the courts are left to merely speculate as to what basis the local board may have had for its determination.

In the present case we find that McAliley has presented a prima facie case for conscientious objector status.[2] See Dickinson v. United States, 346 U.S. 389, 397, 74 S.Ct. 152, 98 L.Ed. 132 (1953); United States v. O'Bryan, 450 F.2d 365 (6th Cir. 1971). In denying his application, however, the local board simply stated that McAliley, "working as a Merchant Seaman and carrying supplies overseas . . . has no grounds

for a 1–O classification as a conscientious objector." From the limited record before us, we are unable to determine what reason, if any, the local board intended to convey by this statement in denying McAliley's application. We find nothing in the fact that McAliley was working as a merchant seaman which in itself would discredit his claim for conscientious objector status under section 6(j) of the Universal Military Training and Service Act, 50 U.S.C. App. § 456(j). It is conceivable, however, that some fact respecting his work as a merchant seaman may appear in McAliley's selective service file which would support a finding by the local board that his alleged beliefs were not sincere. We therefore believe that an evidentiary hearing before the District Court is required to clarify the board's statement and to review McAliley's selective service file for any facts respecting his work as a merchant seaman which may have supported the board's denial of his application. If after an evidentiary hearing, the District Court finds that the board's statement does not present a valid reason for the denial of McAliley's application, we believe that the determination of the board must be reversed.

The District Court's dismissal of McAliley's petition is therefore reversed and the case is remanded for an evidentiary hearing.

2. In his application for exemption as a conscientious objector, McAliley reviewed the history of his beliefs and noted that he "became dissatisfied with the church and began to question the value of organized religious instructions." He gave the following account of his beliefs:
"Defining religion as a life plan which includes one's relations to others, I believe life is more valuable than any political, social or nationalistic theory.

.  .  .  .  .

My belief restricts me from serving in any Armed Forces because Armed Forces are organized for the destruction of human life and I could in no way aid any such organization."
The sincerity of McAliley's opposition to the destruction of life was supported by letters sent to the local board by two of his teachers, his sister, and his mother.

We believe that McAliley has thus presented a prima facie case for exemption under section 6(j) of the Universal Military Training and Service Act, 50 U.S.C. App. § 456(j), as that section was construed by the Supreme Court in United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965). In *Seeger*, the Supreme Court rejected any requirement that an applicant's beliefs have their basis in an orthodox religious doctrine and held that it is sufficient under section 6(j) that one's beliefs "occupy the same place in the life of the objector as an orthodox belief in God holds in the life of one clearly qualified for exemption." 380 U.S. at 184, 85 S.Ct. at 863. See generally Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970); United States v. Coffey, 429 F.2d 401 (9th Cir. 1970).