**Christopher Alvin GRUBB, Petitioner-Appellant,**

v.

**Brig. General William H. BIRDSONG, Jr., Commanding General, Fort Campbell, Ky., Respondent-Appellee.**

**No. 71–1356.**

United States Court of Appeals, Sixth Circuit.

Dec. 6, 1971.

William H. Allison, Jr., Lexington, Ky., on brief, for appellant.

James H. Barr, Louisville, Ky., for appellee; George J. Long, U. S. Atty., James H. Barr, Asst. U. S. Atty., Louisville, Ky., on brief.

Before WEICK, EDWARDS and CELEBREZZE, Circuit Judges.

CELEBREZZE, Circuit Judge.

This is an appeal from the District Court's denial of a petition for a writ of habeas corpus to obtain Appellant Grubb's release from the allegedly unlawful custody of the United States Army. At the time the petition was brought in the District Court, Grubb was stationed at Fort Campbell, Kentucky, where Appellee Birdsong is the Commanding General. In his petition before the District Court, Grubb alleged that the Department of the Army has no basis in fact for denying his two applications for discharge as a conscientious objector. After reviewing the facts alleged in Grubb's petition and Appellee's response to an order to show cause, the District Court denied the petition, holding that the determination of the United States Army Conscientious Objector Review Board was not without a basis in fact.

We affirm the decision of the District Court.

## I.

On April 8, 1971, after the District Court's Memorandum and Order denying Grubb's petition for a writ of habeas corpus, but before oral arguments on this appeal were set to be heard by this Court, Grubb received an "undesirable discharge" from the Army. Thus, as in the companion case of McAliley v. Birdsong, 451 F.2d 1244, decided by us today, the fact that the Petitioner-Appellant is no longer in the Army's custody presents the initial question of whether the present appeal is moot and unreviewable.

As was true of McAliley's undesirable discharge in the companion case, Grubb's discharge resulted from his refusal to train. In neither case was the Petitioner convicted by a court-martial. Nonetheless, as we discussed in the *McAliley* case, we believe that an undesirable discharge carries with it "collateral consequences" which, under the rule

of Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968), and Brown v. Resor, 393 U.S. 10, 89 S.Ct. 51, 21 L.Ed.2d 23 (1968), on remand, 407 F.2d 281 (5th Cir. 1969), require us to hold that Grubb's cause is not moot. We therefore turn to the merits of the present appeal.

## II.

Grubb was inducted into the Army on July 9, 1970. On July 27, 1970, he applied for a discharge as a conscientious objector under Army Regulation (AR) 635–20. Finding that Grubb's "professed beliefs became fixed prior to his entrance into military service," the United States Army Conscientious Objector Review Board recommended that the application be denied. In response to this recommendation, the Secretary of the Army denied Grubb's conscientious objector discharge. On November 3, 1970, Grubb again applied for discharge as a conscientious objector under AR 635–20, and this application was denied as being substantially the same as his original application. On December 30, 1970, Grubb filed the present petition for writ of habeas corpus in the District Court, asserting that there was no basis in fact for the Army's denial of both of his requests for discharge.

We briefly note the history and scope of AR 635–20. In 1968, the Department of Defense directed the armed services to establish procedure for post-induction discharges of personnel who become conscientious objectors after entering the armed services. Department of Defense Directive No. 1300.6, para. IV A, B(1) and (2) (May 20, 1968). AR 635–20 and its predecessor provisions resulted from and were patterned after this directive. AR 635–20(3) (July 31, 1970), which was in effect when both of Grubb's applications were denied, provides in pertinent part:

"(a) Consideration will be given to requests for separation based on bona fide conscientious objection to participation in war, in any form, when such objection develops subsequent to entry into the active military service.

"(b) Federal courts have held that a claim to exemption from military service under Selective Service laws must be interposed prior to notice of induction, and failure to make timely claim for exemption constitutes waiver of the right to claim. However, claims based on conscientious objection growing out of experiences prior to entering military service, but which did not become fixed until entry into the service, will be considered. Requests for discharge after entering military service will not be favorably considered when—

"(1) Based solely on conscientious objection which existed, but which was not claimed prior to induction, enlistment, or entry on active duty or active duty for training."

As was intended under the Department of Defense Directive, AR 635–20 expressly affords a remedy to only those individuals whose conscientious objection becomes fixed after induction into the military.

■ Although paragraph V of Department of Defense Directive No. 1300.6 prescribed that the statutory standards for conscientious objector exemptions under Section 6(j) of the Military Selective Service Act of 1967 were to serve as the basis for discharges, it is clear that AR 635–20 in no way abrogates the rule that a claim of conscientious objection existing, but not asserted, prior to receipt of an induction notice is forfeited. This forfeiture rule appears in a regulation promulgated under the Selective Service Act, which provides in pertinent part:

"[T]he classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction . . . unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which

the registrant has no control. 32 C. F.R. § 1625.2."

The validity of Section 1625.2 was recently upheld by the United States Supreme Court in Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971):[1]

"The System needs and has the power to make reasonable timeliness rules for the presentation of claims to exemption from service.[4]" 402 U.S. at 102, 91 S.Ct. at 1322.

"The power of the Selective Service System to set reasonable time limits for the presentation of claims, with the penalty of forfeiture for noncompliance, seems never to have been questioned by any court." *Id.* at 102, n. 4.

It is thus undisputed that the Army can properly refuse to hear applications under AR 635–20 when it finds that the applicant's conscientious objection existed prior to his receipt of an induction notice. The only question before this Court, therefore, is whether the Army Review Board erred in finding "that Grubb's professed beliefs existed prior to his entrance into military service," thus barring his application for a conscientious objector discharge.[2] In Bohnert v. Faulkner, 438 F.2d 747 (6th Cir. 1971), this Court stated that in reviewing a classification by a local board or the Army Board of Review, courts are bound to

"the basis in fact test [which] is one of the narrowest known to the law. * * * In reviewing a classification under this test the courts are not to weigh the evidence nor judge its substantiality. In such cases they are not superboards. Witmer v. United States, [348 U.S. 375, 380–381, 75 S. Ct. 392, 99 L.Ed. 428 (1955)]; Clay v. United States, 397 F.2d 901, 906 (5th Cir. 1968), [rev'd on other grounds sub nom., Giordano v. United States, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969)]." 438 F.2d at 751.

Since the District Court below expressly applied the basis in fact test and held that the Review Board's determinations were not without a basis in fact, we are limited to a review of the facts to determine whether the District Court erred in its ruling.

In denying Grubb's July 27, 1970, application for discharge under AR 635–20, the Review Board relied on the following statement by Grubb in that application:

"a. I don't believe in killing of any sort, form of war or participating in any war.

1. In *Ehlert*, the Supreme Court upheld a local board's refusal, under 32 C.F.R. § 1625.2, to reopen the classification of a registrant who claimed that his conscientious objection had crystallized after he received his induction notice but before his actual induction. Finding that the registrant would have an in-service remedy under AR 635–20, the Court held that the local board's application of § 1625.2 to bar the registrant's claim filed after receipt of his induction notice was consistent with the policies of Section 6 (j) of the Military Selective Service Act of 1967, 50 U.S.C.App. § 456(j), and with the Selective Service's valid interest in requiring timely claims. The language of the Court clearly indicates its recognition of the rule that the failure to file a claim of conscientious objection existing *prior* to receipt of an induction notice results in forfeiture of that claim as of the date such notice of induction is received, with in-service relief under AR 635–20 being unavailable in such cases. *See* 402 U.S. at 101–104, 91 S.Ct. 1319.

2. In his petition below, as well as in his brief on the present appeal, Grubb asserted the sincerity of his opposition to war in any form, and he supported this claim with letters from several Army officers who had interviewed him and recommended that his application for discharge be granted. The Army Review Board, however, made no finding as to the sincerity of Grubb's belief; rather, the Board's only finding was that Grubb's beliefs had become fixed prior to his entry into the Army, precluding further inquiry under AR 635–20. The question of Grubb's sincerity, therefore, was not before the District Court nor is it before us on the present appeal.

b. I received [my] religious training from my Grandmother to never kill anything no matter what. The rest I learned from my Sunday School and Bible which I believe in very strictly with all my heart and soul."

In a statement submitted August 10, 1970, Grubb noted:

"So all my life I have believed in not killing or war of any kind, because it involves killings. If I participate in war even as a Medic, I would contribute to the war by healing men so they could fight again which would be against my religion."

The Board also relied on a statement by the Commanding General at Fort Campbell (Appellee here) recommending that Grubb's application be disapproved because "[a]pplicant's conscientious objection existed prior to entry into the service." Reviewing this evidence which was before the Review Board, we find, as did the District Court, that there was a basis in fact for the Board's determination that Grubb's conscientious objection became fixed prior to his entry into active service.

Although the District Court made no separate finding respecting a basis in fact to support the Board's denial of Grubb's November 3, 1970, application, we have reviewed the facts to determine if the Review Board had an independent basis for denying this second application on the grounds that it was substantially the same as his initial application. *See* Bohnert v. Faulkner, *supra*, 438 F.2d at 751. Paragraph 5(a) of AR 635–20 provides:

"An application for discharge as a conscientious objector which has been considered and disapproved by Head-

quarters, Department of the Army, will not be reconsidered. However, an applicant may submit second and subsequent formal applications to his unit commander which will be considered if they are not substantially the same as the previously disapproved application(s)."

■ Grubb attempted to distinguish his second application from his earlier unsuccessful application by stating in the second:

"I was not aware before entering service that my beliefs were such as to qualify me as a conscientious objector. I did not know and was not told that my views were those of a conscientious objector. . . . I believed the way I did before I came into the Army and now can place my beliefs in proper perspective because I now feel the undeniable conflict between my beliefs and my military obligation."

Grubb went on to describe the experiences which allegedly support his claim that his conscientious objection became fixed only after he entered the Army. Besides these statements in his second application, the Board had before it the record of Grubb's initial application, in which Grubb had stated that all of his life he had opposed killing and war in any form. Under our narrow scope of review and our inability to weigh the evidence before the Board, we find that the Board's determination that Grubb's second application was substantially the same as his initial application was not without a basis in fact.

The judgment of the District Court is therefore affirmed.