**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Richard Brian HAHN, Defendant.**

**Crim. No. 4-80984.**

United States District Court,
E. D. Michigan, S. D.

Aug. 13, 1974.

Christopher A. Andreoff, Asst. U. S. Atty., Ralph B. Guy, Jr., U. S. Atty., Detroit, Mich., for plaintiff.

Stephen M. Losh, P. C., Warren, Mich., for defendant.

## MEMORANDUM OPINION

JAMES HARVEY, District Judge.

This is a motion to dismiss the indictment and release the defendant from custody in a case involving refusal to submit to induction into the Armed Forces. The defendant has two grounds for his motion, both based on the theory that he was denied due process, and that therefore he cannot be convicted for refusal to be inducted. He claims first that his attempt to be re-classified based on new medical evidence of a sinusitis condition was improperly handled in that (1) the local draft board improperly delegated its duty of re-classification to the Armed Forces Examining and Entrance Station (AFEES), which evaluates medical data; and/or that (2) the procedure for review of medical records by United States Army Recruiting Command (USAREC) set out in a Local Board Memorandum was not followed, to his prejudice. His second claim is that his petition for conscientious objector status was improperly denied a hearing by the local board.

The chronology with respect to the medical claim is as follows. The defendant had his pre-induction physical on August 9, 1972, and was found fit. On August 22, 1972, he submitted three doctors' letters to his local board, detailing a mild sinusitis condition for which defendant had received treatment in 1967. These letters were forwarded to state Selective Service headquarters and then re-forwarded to AFEES for review. AFEES then notified the local board that defendant was still medically acceptable; and the board so notified defendant, on the same day it received notice from AFEES. An induction order was allegedly sent to defendant on that day (September 11, 1972), but defendant denied receipt of it. His induction was re-scheduled for November 29, 1972, and on that date defendant went to the induction center but refused to board the bus.

With respect to the C.O. claim, the facts are as follows: On August 7, 1972, about a month after receiving notice of his I–A classification, defendant wrote to his local board requesting SSS Form 150 (Special Form for Conscientious Objector), stating:

"I am a conscientious objector to war and the machines of war. I cannot participate in any kind of military service as I am opposed to its function. Please send me Form 150 or whatever form(s) that must be filled out to officially register my position and obtain a I–O classification."

Defendant was sent Form 150 on August 8. On November 24, after he had received notice of induction, defendant returned the completed Form 150. No action was taken on this matter by the board.

The defendant has been given access to his Selective Service file; there is very little dispute as to factual matters.

### Propriety of the Motion.

█ The defendant has brought a Rule 12, F.R.Cr.P., motion to dismiss the indictment. His defense is not jurisdictional, but rather on the merits; thus, technically, a Rule 12 motion to dismiss is improper. However, since there appear to be no fact issues to be decided, all parties have agreed that a motion hearing will be the most expedient format in which to decide the issues of law which are involved. See, United States v. Price, 351 F.Supp. 1045 (W.D.Mich. 1972), for a similar motion hearing on a motion to dismiss the indictment on the merits.

### The Medical Claim.

Defendant's three doctors' letters, submitted after his physical examination but before notice of induction was received, described a condition of mild sinusitis which caused headaches in 1967. Sinusitis is a condition for which draftees will be rejected if it is either acute, or chronic and "more than mild". This latter condition must be evidenced by "chronic purulent nasal discharge, large nasal polyps, hyperplastic changes of the nasal tissues, or symptoms requiring frequent medical attention"; it must be confirmed by "transillumination" or X-rays. Army Regulation AR40–501 Series XIV 2–28, dated August 10, 1971, cited at SSLR 2210, December 1971. The letters submitted describe a sinusitis condition for which medication was prescribed. One letter stated there were no polyps or purulent material, but noted edema and tenderness. A radiologist's report diagnosed sinusitis, from "complete opacification of the left maxillary antrum." There is little doubt that the defendant suffered from some sinusitis in January, 1967. The government claims that the condition was not acute and that there was no evidence it was chronic, as there are no follow-up doctor's reports or other evidence of a chronic condition, and more particularly since defendant answered an official questionnaire asking whether he had any condition which might disqualify him with the response "does not apply". Selective Service Classification Questionnaire Oct. 15, 1968. The government contends that the request to reclassify defendant embodied in the three letters was frivolous, and therefore did not require the local board to reconsider defendant's classification.

Defendant sets forth two main lines of argument: (1) that the local board denied him due process by referring the determination of whether to reopen his classification to AFEES and then acting immediately without further consideration merely on the basis of AFEES's finding of no change in medical status; and (2) that the local board failed to follow the procedure set up in Local Board Memorandum No. 121 issued June 25, 1971, providing for review of AFEES determinations in this sort of case by USAREC.

### (1) Delegation of decision not to reclassify.

The defendant claims that the ministerial action taken by the clerk-typist of

the local board in sending out a letter stating that defendant was still medically acceptable, after such a finding by AFEES, was an improper delegation of the classification function to AFEES. He cites Eagles v. United States ex rel Samuels, 329 U.S. 304, 67 S.Ct. 313, 91 L.Ed. 308 (1946):

" . . . the local boards and the boards of appeal may not abdicate their duty by delegating to others the responsibility for making classifications. That is their statutory function." 329 U.S. at 315, 67 S.Ct. at 319.

This duty, as outlined in 32 C.F.R. 1625.2, is to reopen and consider re-classification where new facts which would "justify a change in the registrant's classification" are presented to the board. If such facts are presented, the board may not, under the *Eagles* case, deny re-classification without a vote and a statement of reasons.

The government contends that in the present case it never reopened defendant's classification because the claim of new evidence justifying re-classification was frivolous. Therefore, it argues, the clerk's letter to the defendant notifying him that re-classification had been denied was proper even if it was not based on board action, since no board action was required.

■ The defendant's claim, that his doctors' letters describing a condition of 5 years before stated a claim requiring reopening of the classification, does appear to be frivolous, as it states no facts regarding the defendant's present medical condition which would be relevant to his medical acceptability. The claim of prejudice resulting from denial of due process because of improper delegation should be denied.

*(2) Procedural irregularity.*

■ The defendant claims he was denied due process because the Selective Service did not follow the procedure set out in Local Board Memorandum 121, June 25, 1971, providing for review of

AFEES determinations of medical acceptability by USAREC. The government admits that defendant's claim was never reviewed by USAREC but contends that this was in compliance with Memorandum 121. A failure by the Selective Service to comply with its own regulations, including local board memoranda, will be grounds for a finding of denial of due process, where prejudice can be shown. Naskiewicz v. Lawver, 456 F.2d 1166 (CA2 1972).

The provisions of Local Board Memorandum 121 are somewhat obscure. A careful reading indicates that the following actions are possible upon receipt of new medical evidence by the local board. The file including the new documentation may be sent directly to the AFEES if the local board determines that no new physical examination is required, and the case can be handled on a "papers only" basis. The AFEES then reports back to the local board on any change in medical status.

If the registrant has requested a final review or a re-evaluation or if the local board cannot determine whether such a request must be implied, the file with the new information is forwarded to the state headquarters. If a request for final review is found, the file is forwarded to USAREC for final review. If the issue is whether a reexamination is needed, state headquarters must either forward the file to AFEES or attach a statement to the file indicating why such re-evaluation is not available.

Once a file goes to AFEES from state headquarters, a tentative determination of medical acceptability is made, which is then forwarded to USAREC for final determination. This finding and statement of reasons are then returned to AFEES, and forwarded by AFEES to the local board, with a new Statement of Acceptability if a change in status has been found. The procedure then provides for a form statement to the registrant notifying him of his continuation or change of status.

In the present case, the file and doctors' letters were sent to the state head-

quarters, and from there to AFEES. A decision taken by AFEES, without USAREC review, was then returned to the local board, and notification was sent to the defendant. This procedure is not authorized by the memorandum because according to the procedures set out there, once the file goes to state headquarters, the registrant is entitled to either a statement of reasons why he is not being given re-evaluation and final review by USAREC, or he must be given such a final review. If the file had gone directly to AFEES as a "papers only" case, without ever reaching the state headquarters, the lack of USAREC review and of a statement of reasons for denial of the review would not have been a violation of the regulations.

■ Thus, the defendant's claim of denial of due process must rest on a showing that the forwarding of his file to the state headquarters (the only unauthorized step in the chain of events) caused him prejudice. In view of the frivolous nature of the claim for medical deferment, and the absence of any showing of prejudice resulting from the procedures followed, the claim of denial of due process by failure to follow Selective Service regulations should also be denied.

*The C.O. Claim.*

The defendant asserts three arguments for challenging the procedure under which his conscientious objector claim was handled. First, he asserts that his pre-induction notice letter requesting Form 150 stated a prima facie claim of C.O. status, thus making failure of the board to reopen his classification a denial of due process. Second, he argues that even if his letter did not state a prima facie case for C.O. status, he would be denied a full hearing on his claim entirely if he were not to be permitted one by the local board. Third, he argues that the failure of Form 150 to include notice of the 30-day time limit for returning the completed form meant that he never knowingly waived his

right to present his C.O. claim by failing to file Form 150 prior to receipt of his induction notice.

■ With respect to the claim that defendant's letter of August 7, 1972, presented a prima facie case for C.O. status, both sides agree that the standard for such a case was set out in a series of recent Supreme Court cases. The defendant must show that he is conscientiously opposed to war in any form, not just to a particular war. Gillette v. United States, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971). He must show that his opposition stems from his "moral, ethical, or religious beliefs about what is right and wrong and that these beliefs be held with the strength of traditional religious convictions." Welsh v. United States, 398 U.S. 333 at 340, 90 S.Ct. 1792, at 1796, 26 L.Ed.2d 308 (1970). Third, he must show evidence of sincerity. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955).

■ In his August 7 letter defendant stated that he was a "conscientious objector to war and the machines of war" and that he could not "participate in military service", as he is "opposed to its function." He included no statement that his beliefs rose to the strength of traditional religious convictions. Thus, no prima facie case that defendant met the three tests was made out. The board was therefore justified in merely sending out Form 150 and waiting for the defendant to establish his claim.

Second, defendant argues that although the Selective Service regulations do not require the board to reopen a classification where new information is received after notice of induction has been sent out, 32 C.F.R. 1625.2, this regulation is a denial of due process where the board had prior notice that the registrant had a conscientious objector claim to assert and thus knew that the claim had crystallized before notice of induction was sent out. Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971), holds that a draft

board need not consider a conscientious objector claim which is filed or asserted after the registrant has received an induction notice, since such a claim would be subject to in-service review within the military under Department of Defense Directive AR635–20. The *Ehlert* decision is based on a finding that claims which crystallize after the induction notice is sent have a sufficient forum for hearing within the military and thus need not be heard by Selective Service.

A recent Eastern District of Michigan decision, United States v. Takala, No. 47042, September 11, 1972, points out that the situation before this Court is not encompassed by the *Ehlert* rationale that a division of fora can be based simply on whether the claim was filed before or after the date of notice of induction. The Sixth Circuit case of Grubb v. Birdsong, 452 F.2d 516 (CA6 1971), was cited in *Takala* to show that where conscientious objections pre-existed the notice of induction, but were not filed until after, the military could refuse jurisdiction on the ground that failure to raise the objection prior to receipt of the induction notice waived the objection. In *Grubb*, the conscientious objector did not give notice of his claim until after induction; but in his supporting letters he stated that he had had a lifelong religious belief that prevented him from participating in war. The Sixth Circuit found that these statements constituted a sufficient basis in fact for the military's finding that the claim had crystallized before notice of induction and upheld the waiver of the claim.

■ In the present case, defendant's letter of August 7, 1972, is clear evidence that his claim pre-existed his receipt of notice of induction. Thus, he could not be denied a Selective Service forum for his claim solely on the basis that he would be given a hearing within the military.

In *Takala*, the defendant had made a request for Form 150 before receiving notice of induction, but he did not return the form within the 30-day time limit or before receiving notice of induction. His request letter merely stated his belief that he qualified for C.O. status; it did not state a prima facie case which would require reopening of his classification under 32 C.F.R. 1625.2. . The Court nevertheless found that denial of a Selective Service forum on the ground of untimeliness was a denial of due process because the defendant never knowingly waived his claim, having put his local board on notice of his beliefs before receipt of the induction notice, and "not as an effort to prolong controversy with his Local Board, but rather on the belief that Form 150 was an inappropriate form (he did not object to military service on religious grounds) and that another ground of deferment . . . was available to him." (p. 7). The court concluded:

"This court recognizes that failure of a registrant to make a timely assertion of rights before a local board could result in a loss of those rights. But to say here that the conduct of the defendant results in a forfeiture of his conscientious objector claim would be unjust. Takala did not remain silent about his conscientious objector claim. Under the circumstances he was entitled to a hearing on the merits . . . and if his claim was denied, to a statement of reasons therefor." Id.

In the present case, not only did the defendant think he had another ground of deferment (his medical claim), but he denies, and the government nowhere asserts, that he had notice of any time limit within which his Form 150 had to be filed.

Under *Takala*, therefore, this Court finds that there was a denial of due process in the local board's failure to consider the conscientious objector claim. The indictment is therefore dismissed, and the defendant is to be released from custody.