**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**David Eugene O'BRYAN, Defendant-
Appellant.**

**No. 21008.**

United States Court of Appeals,
Sixth Circuit.

Oct. 27, 1971.

Earl O'Bannon, Jr., Louisville, Ky., for defendant-appellant; Robert E. Delahanty, Louisville, Ky., on brief.

Edward M. Steutermann, Louisville, Ky., for plaintiff-appellee; George J. Long, U. S. Atty., A. Duane Schwartz, Asst. U. S. Atty., Louisville, Ky., on brief.

Before EDWARDS and MILLER, Circuit Judges, and McALLISTER, Senior Circuit Judge.

WILLIAM E. MILLER, Circuit Judge.

This is an appeal from a conviction for refusing to submit to induction into the Armed Forces of the United States, in violation of 50 U.S.C. App. § 462(a). The appellant, David Eugene O'Bryan, was tried by jury on September 23, 1970, before Honorable James F. Gordon, United States District Judge for the Western District of Kentucky, at Owensboro, Kentucky and found to be guilty. He was sentenced to five years imprisonment, the maximum allowable under the Selective Service Act of 1970.

The appellant registered with Selective Service Local Board #20 of Owensboro, Kentucky on May 5, 1967. He was eighteen years of age and a senior in high school. On May 22, he was classified I-A (immediately available for military service). In the fall of 1967, he enrolled in Brescia College, a Catholic school in his hometown, Owensboro. He requested and received a II-S (deferred because enrolled in full-time course of college study) classification, which he retained through his first year of college. In the fall of his second year, appellant, working at a grocery, dropped two courses, bringing him below the number of hours needed to be considered a full-time student by the Selective Service System. The college duly apprised Local Board #20 of this change and on October 21, 1968, the appellant was reclassified I-A. On November 12, 1968, he appealed the classification, asking to be allowed to retain his II-S classification. The State Appeals Board upheld the new classification without dissent on January 3, 1969.

Subsequent to this determination, O'Bryan received a letter from the local board ordering him to report for a pre-induction physical. Soon thereafter the board received a letter from the appellant, dated January 17, 1969, in which he reiterated " * * * I am a full-time student," and added, "I wish to be a conscientious objector to the Armed Forces." Local Board #20 mailed to the appellant Selective Service Form 150, the official application for classification as a conscientious objector. This was promptly filled out and returned to the board on February 20, 1969.

Upon receipt of the Form 150, the local board reopened the file to consider O'Bryan's conscientious objector claim. The board decided unanimously that the request for the I-O (conscientious objector) classification should be denied. Upon notification of this result O'Bryan requested a personal appearance and on May 20, 1969 appeared before the members of Local Board #20. At that time, he made clear his willingness to fulfill his obligation through alternative civilian service. He made equally clear, however, that he could and would not serve in the military in a non-combatant status; he had not requested an I-A-O (conscientious objector but available for non-combatant duty) classification because he felt that such service consti-

tuted support of and active participation in war. The minutes of the proceeding reveal that he was questioned closely by the board on this point as well as with regard to the fact that he did not request an I–O classification until it was clear that he no longer could retain student status. The board adhered to the I–A classification. He appealed his classification to the State Appeals Board and again it was unanimous in its agreement with Local Board #20. On July 16, 1969, the appellant was mailed an order to report for induction on August 19, 1969. He did not appear on that date. Contacted by telephone, he is said by the executive secretary of Local Board #20 to have stated: "I am conscientiously opposed and am refusing induction." Out of this refusal the case before us arose.

Appellant urges that his conviction should be reversed for a number of reasons. We consider only his assertion that the trial court erred in not entering a judgment of acquittal.[1]

■ The district court instructed the jury,

> I have examined in its entirety the file of Mr. O'Bryan as kept in the Selective Service System and I instruct you as a matter of law there was a basis, in fact, for the classification made of the registrant by the Selective Service Board as to its refusal to classify him as a conscientious objector.

However, an independent and careful examination of appellant's Selective Service file by this Court reveals no basis in fact for the Local Board's determination that he should be classified I–A rather than I–O. The board, therefore, acted beyond its jurisdiction in so classifying the appellant and in subsequently ordering him to report for induction. Estep v. United States, 327

U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946). Since a selective service registrant cannot be convicted for his refusal to obey an unlawful order, appellant is correct in his assertion that the trial court erred in not entering a judgment of acquittal.

It is well to review the principles which define the role of the federal judiciary in the review of selective service classifications and which lead us to reverse the holding of the district court. See Bohnert v. Faulkner, 438 F.2d 747 (6th Cir. 1971). In Estep v. United States, *supra,* the Supreme Court set forth these principles, articulating clearly the concerns which underly them. There the Government argued that judicial review of local board classification determinations was precluded by Section 10(a) (2) of the Selective Training and Service Act of 1940, which stated in pertinent part:

> The decisions of such local boards shall be final except where an appeal is authorized in accordance with such rules and regulations as the President may prescribe. 54 Stat. 894, 50 U.S.C. App. § 310 [Now, 50 U.S.C. App. § 460(b) (3)].

The Court found the Government's contention to be without merit. Mr. Justice Douglas expressed well the concerns of the Court and we take liberty to quote from the Court's opinion at some length:

> We cannot believe that Congress intended that criminal sanctions were to be applied to orders issued by local boards no matter how flagrantly they violated the rules and regulations which define their jurisdiction. We are dealing here with a question of personal liberty. A registrant who violates the Act commits a felony. A felon customarily suffers the loss of substantial rights. Sec. 11, being

---

1. Appellant argues, in addition, that the trial court erred in refusing certain of his proffered instructions; that the trial court erred in not allowing his answers to the questions found on Selective Service Form 150 to be read to the jury in their entirety; that the trial court erred

by refusing to allow the clerk and members of the local board to answer questions pertaining to the number, nature, and disposition of other conscientious objector applications to it; and that, in light of all the circumstances, the sentence was excessive.

silent on the matter, leaves the question of available defenses in doubt. But we are loathe to resolve those doubts against the accused. We cannot readily infer that Congress departed so far from the traditional concepts of a fair trial when it made the actions of the local boards "final" as to provide that a citizen of this country should go to jail for not obeying an unlawful order of an administrative agency. We are loathe to believe that Congress reduced criminal trials under the Act to proceedings so barren of the customary safeguards which the law has designed for the protection of the accused. The provision making the decisions of the local boards "final" means to us that Congress chose not to give administrative action under this Act the customary scope of judicial review which obtains under other statutes. It means that the courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant. *Estep, supra,* 327 U.S. at 121, 122, 123, 66 S.Ct. at 427.

As Mr. Justice Douglas made plain and as we noted recently in Bohnert v. Faulkner, 438 F.2d 747 (6th Cir. 1971), the scope of review under the "basis in fact" test has repeatedly been held to be among the narrowest known to the law. See also, Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955); United States v. Washington, 392 F.2d 37 (6th Cir. 1968). It has been stated that reviewing courts are not to act as "superboards," Witmer v. United

States, *supra,* and that they are not to weigh the evidence nor judge of its substantiality. Clay v. United States, 397 F.2d 901, 916 (5th Cir. 1968).

■ Nevertheless, the jurisdictional question embodied in the "basis in fact" test does present a vital question for the reviewing court. Cox v. United States, 332 U.S. 442, 452–453, 68 S.Ct. 115, 92 L.Ed. 59 (1947). (See also Bohnert v. United States, *supra,* and the cases cited therein at 751 of 438 F.2d). The very narrowness of the scope of the review makes it all the more important that the function be performed with the utmost diligence. In the *Bohnert* case, *supra,* we discussed the function of the Court of Appeals in the process:

> In making its review this Court may make an independent search of the administrative record for a basis in fact to support the Board's decision regardless of the findings of the District Court. (Citing cases) In deciding whether there was a basis in fact the Court may take into account possible errors by the Board in applying applicable law. Bohnert v. United States, *supra,* 438 F.2d at 751.

■■ The "basis in fact" test actually involves two steps. At the threshold, the reviewing court must determine, on the basis of the registrant's submitted Selective Service Form 150 and supplemental material, whether the registrant has made out a prima facie case for entitlement to classification as a conscientious objector. Cf. Miller v. United States, 388 F.2d 973, 976 (9th Cir. 1967); Stain v. United States, 235 F.2d 339, 343 n. 13 (9th Cir. 1956). An abstract of O'Bryan's response to the questions posed by Form 150 is set forth in the margin.[2] Neither the Government nor the district court suggested that appellant's statement of his conscientious

2. I am a Roman Catholic and I do believe in a Supreme Being. Today's wars partake at every moment of the danger of nuclear annihilation, and this is an irredeemable disaffirmation of my belief in the community of man and God. Killing any form is wrong except in the act of self-defense. And the way the present

American foreign policy stands, any war in which I would be asked to partake would disaffirm my religious beliefs. I am prepared to perform civilian alternating service.

My religious training has been Catholic since my birth. My first three years of high school were at the Saint Thomas

objection does not make out a prima facie case. Furthermore, our own independent and careful consideration of these materials satisfies us that appellant's statement of his claim for conscientious objector status is as definite and strong as the statement of the registrant in United States v. Coffey, 429 F.2d 401, 402, 9 Cir. 1971, where it was held that a prima facie case was made out. Supporting precedent is ample. To the same effect, see O'Brien v. Resor, 423 F.2d 594 (4th Cir. 1970); United States v. Broyles, 423 F.2d 1299 (4th Cir. 1970); United States v. Vlasits, 422 F.2d 1267, 1268, 1269 (4th Cir. 1970); United States v. Lemmens, 430 F.2d 619, 621, 622 (7th Cir. 1970). Furthermore, see generally, Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970).

█ Finding that the appellant has made out a prima facie case for his entitlement to an I–O classification on the basis of the material submitted with his Selective Service Form 150, we turn to the question whether his administrative file contains any basis in fact for the Local Board's determination that he should not receive that classification. The Supreme Court discussed the process of examination that is the function of the reviewing court in conscientious objector cases in Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955), a case in which it was found that inconsistencies in the statements and actions of the registrant constituted basis in fact for a finding of insincerity. Mr. Justice Clark stated:

\* \* \* the ultimate question in conscientious objector cases is the sincerity of the registrant in objecting, on religious grounds, to participation in war in any form. In these cases, objective facts are relevant only insofar as they help in determining the sincerity of the registrant in his claimed belief, purely a subjective question. In conscientious objector cases, therefore, any fact which casts doubt on the veracity of the registrant is relevant. It is "affirmative evidence \* \* \* that a registrant has not painted a complete or accurate picture \* \* \*." Dickinson v. Unit-

Seminary in Louisville. Here is where I decided I could serve my God, my country, and mankind by doing social work. I decided not to be a priest not because I am not interested and fascinated by the way they give themselves so completely to God. I, thus, changed my mind from becoming a priest to being some sort of social worker.

My religious advisor is Father Richard Clements. He is pastor of Blessed Mother Parish which is my own parish. I have talked to him several times. I talked to him when I left the seminary, and when I decided to file for a C.O. He knows my beliefs and my sincerity in them and he told me he was willing to let me use him as a reference.

Actually, the course of development of my belief has matured more recently than at any other time. They did start however in high school. We are supposed to be trying to stop Communist aggression over in Viet Nam, but what have we done so far. Nothing except lose valuable and irreplaceable people from our own country as well as others. It seems that "war" is not "just," and is becoming "too politically involved."

The many lives we have lost could have been saved. We could be using the power of non-violence such as Mahatma Gandhi used in India. I have read discourses from two books about Gandhi. They are "Mahatma Gandhi" (an interpretation) by E. Stanley Jones, and "Mr. Gandhi" by Ranju Shahani. These two books about Gandhi have led me to believe that the power of nonviolence is very great and can be used with wonderful and lasting results. Gandhi's achievements were based on "soul force" instead of violence, and on love instead of resentment and hate. The power of love is too great to overcome. Passive resistance was his invincible weapon. This is why I cannot believe in any war, and especially the fact that nuclear annihilation is possible at any moment. Why should violence be used when a passive way is possible and much more effective since it is a possible way of producing political and social changes that would leave no lasting bitterness. Evil can be overcome by good. War is evil and you cannot overcome evil with evil. This is immoral.

ed States, *supra* [346 U.S. 389, p. 396, 74 S.Ct. 152, p. 157, 98 L.Ed. 132]. In short, the nature of a registrant's prima facie case determines the type of evidence needed to rebut his claim. If the issue is the nature of his activities, as in *Dickinson,* the evidence providing "basis in fact" must tend to show that his activities are other than as stated. If, as here, the issue is the registrant's sincerity and good faith belief, then there must be some inference of insincerity or bad faith. Witmer v. United States, *supra,* at 381–382, 75 S.Ct. at 396.

In United States v. Washington, 392 F.2d 37 (6th Cir. 1968), a much cited case, in which this court found a local board's refusal to grant conscientious objector status to a registrant to be without basis in fact, we relied heavily on the above quoted language from *Witmer, supra,* stating:

> Where, however, the veracity of the registrant is the principal issue, disbelief will suffice. But even in the latter situation, *the record must contain some statement of this disbelief if the classification is to be upheld upon judicial review.* United States v. Washington, *supra,* at 39. (Emphasis added).

This statement must set forth a "rational basis" for its determination. Cf. Roberson v. United States, 208 F.2d 166, 169 (10th Cir. 1953). As the Second Circuit stated, " * * * to sustain the denial of a claim on a mere *ipse dixit* of lack of sincerity from the Local Board or the hearing officer would create serious possibilities of abuse." United States v. Corliss, 280 F.2d 808, 814 (2nd Cir. 1960).

Although not accepted unanimously by the circuits,[3] the requirement that a local board articulate its reasons for denial of conscientious objector status has been accepted with reasoned accord. After quoting with approval the above quoted passage from the *Washington* case, *supra,* the Court of Appeals for the 9th Circuit in United States v. Haughton, 413 F.2d 736 (1969), stated:

> Inconsistent statements or actions or a finding of insincerity may support the denial of conscientious objector status. Parrott v. United States, *supra* [370 F.2d 388 (9th Cir. 1966)]; see Witmer v. United States, at [348 U.S.] 382, 75 S.Ct. 392. *The local board, however, must state the reasons for its denial of a requested classification* when a registrant has 'met the statutory criteria' (*Parrott, supra,* at [370 F.2d] 388) for that classification or, in the language of Dickinson, has placed himself 'prima facie within the statutory exemption.' 346 U.S. at 397, 74 S.Ct. at 158. Kessler v. United States, 406 F.2d 151, 156 (5th Cir. 1969). 413 F.2d at 759. (Emphasis added.)

Then, after analyzing the registrant's claim and concluding that he had presented a prima facie claim, the Court expressed the concerns which motivated its requirement that the board state its reasons for its determination, concluding:

> The local board may have concluded that Haughton was insincere in his claim, or that Haughton's religious training and beliefs did not, by themselves, lead him to his opposition to war. The board may have relied on information not in the record, contradicting the allegations in Haughton's form 150. Or the board may have erroneously concluded that Haughton's allegations, even if true, did not entitle him to his requested classification. Since the board has not stated the basis for its decision, we cannot determine whether Haughton was properly denied conscientious objector status. United States v. Haughton, *supra,* at 413 F.2d 742–743.

The Fourth Circuit echoed the rationale of *Haughton,* id., stating:

> For the reasons advanced by the Ninth Circuit, we are persuaded that

---

3. See e. g. Gruca v. Secretary of the Army, 436 F.2d 289 (D.C.Cir. 1970).

the rule in *James* [United States v. James, 4 Cir., 417 F.2d 826] should extend to cases where the basis of rejection of a claim of conscientious objection may be other than solely the registrant's credibility. In any case where the board fails to disclose the basis for its decision, we risk blind endorsement of a mistake of law. Where it is clear that a *prima facie* case was established, we conclude that in conscientious objector cases, it is essential to the validity of an order to report that the board state its basis of decision and the reasons therefor, i. e., whether it has found the registrant incredible, or insincere, or of bad faith, and why. United States v. Broyles, 423 F.2d 1299, 1304 (4th Cir. 1970).

We are convinced that, absent a statement of reasons from the local board in the registrant's selective service file, a court cannot properly perform the function of review set forth in *Estep, supra.* In Sicurella v. United States, 348 U.S. 385, 75 S.Ct. 403, 99 L.Ed. 436 (1955), the Supreme Court reversed a court of appeals ruling upholding a selective service system determination where the report of the Department of Justice to the Appeal Board contained an error of law. The Court stated the rationale which the *Broyles* and *Haughton* courts were to rely on some years later:

> * * * we feel that this error of law by the Department, to which the Appeal Board might naturally look for guidance on such questions, must vitiate the entire proceedings at least where it is not clear that the Board relied on some legitimate ground. Sicurella v. United States, *supra,* at 392, 75 S.Ct. at 406.

By the same token, a reviewing court faced with a silent file may only speculate as to what factors motivated a given determination. The role of reviewer mandated in *Estep, supra,* though circumscribed, envisioned a determination by the reviewing court of whether the local board exceeded its jurisdiction by making a decision which was without factual basis. Unless it is known which ground among the many upon which the board may have relied, it is often impossible to perform the function of review even within the narrow scope of the selective service context.

The validity of the requirement that the local board articulate plainly its reasons for denial of requests for conscientious objector status is illustrated by an examination of the position of the Government in this particular case. The factors relied upon by the Government reveal basic misconceptions with regard to selective service law as it now stands.

The Government has stated in its brief: "The record is full of inconsistent statements and actions of appellant." Three examples are cited. The record of the board members' questioning of the appellant during his personal appearance suggests that the following were factors which may have influenced the Board: First, the Government argued that the appellant's failure to take "action concerning a I–O classification until January 20, 1969," after having requested and been denied a II–S classification and having been ordered to report for pre-induction physical was sufficient basis in fact for the Board's determination.

■ While the timing of one's request for conscientious objector classification may in some situations supply a basis in fact for the denial of the request,[4] our response to the Government's reliance on that factor under these circumstances is identical to that of the Second Circuit in United States v. Bornemann, 424 F.2d 1343 (2nd Cir. 1970),[5] a case like the present one, where the registrant did not apply for I–O classification until after he voluntarily withdrew from VISTA, thereby giving up a II–A (deferred) classification. (He had retained a II–S classification during the

---

4. See e. g. United States v. Messinger, 413 F.2d 927 (2nd Cir. 1969); Salamy v. United States, 379 F.2d 838 (10th Cir. 1967); and United States v. Corliss, *supra.*

bulk of his college years.) Upon his withdrawal from VISTA, Bornemann applied for conscientious objector status. Judge Kaufman stated the rationale of the court in rejecting the Justice Department's assertion that the registrant's failure to apply for an I–O classification prior to the loss of his II–A classification was an objective factor tending to show insincerity thusly:

It is clear that at no time prior to August 1966 would Bornemann's presentation of his conscientious objector claims have resulted in his being placed in a classification lower than the one he was entitled to on other grounds.

\* \* \* \* \* \*

We are thus of the view that Bornemann brought his conscientious objections to the attention of his board as soon as 32 C.F.R. § 1625.1(b) required him to do so. In our view it would be improper to penalize him for failure to act with greater dispatch than the regulations demanded. We conclude therefore, when the Department of Justice maintained that Bornemann's failure to present his claims prior to August 1966 was an objective factor the Appeal Board could consider as tending to show insincerity, it erred. United States v. Bornemann, *supra,* at 1347–1348.

Here, appellant applied for a I–O classification promptly upon the exhaustion of his administrative remedies with regard to the loss of his student deferment. The failure to do so earlier does not constitute basis in fact for a finding that O'Bryan's conscientious objection was insincere.

■■ Second, the Government stated:

His initial letter appealing his I–A and asking for I–O classification probably exemplifies his inconsistency with action and beliefs: "I disagree with the

war in Viet Nam, \* \* \* I'm against the draft \* \* \* I will do everything possible to stay out \* \* I wish I could leave the country. \* \* \* I wish to be a conscientious objector to the Armed Forces. In other words I want no part of it. \* \* "

We find nothing in the above quoted passage that is inconsistent with a claim of conscientious objection. On the contrary it tends to underscore the force of O'Bryan's beliefs. Entitlement to CO status is not restricted to those who have read the pronouncement of the courts in this area and who express their views with them as models or to registrants who have counsel familiar with the selective service law available to assist them at every stage in the process. United States v. James, *supra,* 417 F.2d at 829. As the Supreme Court stated in United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965):

\* \* \* it must be remembered that in resolving these exemption problems one deals with the beliefs of different individuals who will articulate them in a multitude of ways. In such an intensely personal area, of course, the claim of the registrant that his belief is an essential part of a religious faith must be given great weight. Id. at 184, 85 S.Ct. at 863.

■ And, third, the Government relies on the appellant's suggestions that he might flee to Canada as "indicative of this lack of sincerity, and inconsistent approach." Again we cannot agree. The threat of flight to Canada indicates nothing if not depth of feeling; such a suggestion does not lead to an inference of insincerity.

Hence if the members of the Board were motivated by one or more of these factors in denying appellant conscientious objector status, they acted upon impermissible grounds. Such a determination is a nullity and beyond the juris-

---

5. See United States v. Bornemann, id. at 1348 where Judge Kaufman distinguishes the above mentioned cases where timing has been held to be a basis in fact for a finding of insincerity. Judge Kaufman's reasoning is correct and equally applicable to the instant case.

diction of the Local Board. While it is theoretically possible that the Local Board's determination was based on permissible grounds (though search of the record reveals no objective basis for such a determination), it is impossible, in light of the Board's silence as to its reasons for the determination, to do more than speculate as to what such grounds might be. As we have stated above, a court cannot properly perform the function of judicial review mandated in *Estep, supra,* in such a case.

Thus, because the Local Board failed to set forth reasons which point to basis in fact for its determinations, and because our own independent search of the registrant's administrative file reveals no basis in fact upon which such a determination could validly have been made, we hold that the district court did, as the appellant asserts, err in not entering a judgment of acquittal.

Accordingly, we conclude that the judgment should be and it is hereby reversed and the action is remanded to the district court with directions that a judgment of acquittal be entered.

Friendly, Chief Judge, concurred and filed opinion.