**UNITED STATES of America**
v.
**Fred Allen PHILPOT.**
Crim. No. 71–0438–M

United States District Court,
D. Maryland.
July 31, 1972.

George Beall, U. S. Atty., and Russell T. Baker, Jr., Asst. U. S. Atty., Baltimore, Md., for plaintiff.

John M. McLoughlin, Hyattsville, Md. (Court appointed), for defendant.

MEMORANDUM OPINION
AND ORDER

JAMES R. MILLER, District Judge.

The defendant, Fred Allen Philpot, is now under a one count indictment for violating 50 U.S.C. App., § 462 by failing and refusing to comply with an order of his Local Board to submit to induction into the Armed Forces of the United States. A motion to dismiss has been filed by defendant on the ground, *inter alia*, defendant was entitled to an I–O (conscientious objector) classification, the Local Board's denial of this classification being invalid and without a "basis in fact." For the reasons stat-

ed below the motion to dismiss will be granted.

Defendant's selective service file (hereafter referred to as File) which has been made part of the record in this case indicates that on February 17, 1970, defendant was classified I–A by Local Board No. 4 in Pineville, Kentucky. Previously, Philpot had been classified II–S (student deferment). On February 27, 1970, defendant made a personal visit to his Local Board to inquire about reclassification as a conscientious objector. At that time Mrs. Alice Earle, who was then Executive Secretary of Local Board No. 4, gave defendant S.S. Form 150 to fill out and return to the Board. (File p. 173). On March 27, 1970, defendant returned the S.S. Form 150 to Local Board No. 4 requesting classification as a conscientious objector opposed to participation in either combatant or noncombatant training and services in the Armed Forces. (File pp. 158–170).

On April 4, 1970, defendant's case was opened by his Local Board, his application for I–O classification was considered and the request was denied by a 3–0 vote of the Board (File p. 8). On May 12, 1970, defendant made a personal appearance before Local Board No. 4, the subject matter of which is reflected in the following summary:

"Registrant had made application for C/O classification and was turned down on April 14, 1970. The local board wanted to talk with the registrant and requested that he come up and talk with them. He did and told them about the same things that he had submitted in writing at the previous meeting. Therefore no new information was submitted and the case was not opened. The local board only wanted clarification on the way he stood. They asked him about whether he would be willing to go in and serve his country without bearing arms and he told them that he refused to even

wear the uniform. He did not belong to any church and did not work any place." (File p. 119).

Since defendant had previously requested an appeal (File p. 121), the Local Board then forwarded defendant's file to the Appeal Board on May 5, 1970, and on May 27, 1970, he was classified I–A by the Appeal Board (vote 5–0). (File p. 118).

Defendant then requested that his Local Board allow him another personal appearance because of a recent Supreme Court decision regarding conscientious objectors. (File p. 114). On June 16, 1970, defendant again appeared before the Local Board to challenge his I–A classification. Although the Board reopened and reviewed the case, it refused to change his classification and continued him "in I–A Accepted and ready for induction on the expiration of the present 30 day appeal period." (File p. 113). The only reason given by the Board in denying defendant's request was that it did not feel defendant was sincere in his belief. No explanation for this finding of insincerity appears in the file. The minutes of action sheet in the file merely indicates the following with respect to the June 16, 1970 personal appearance:

"6–16–70 Case was re-opened to review and see if anything could be done regarding the new ruling of the supreme court. Since the local board does not believe the registrant is sincere in his belief and only is trying everything in the book to stay out of the armed forces, they again turned his request down and retained him in 1–A." (File p. 9).

After the request for a I–O classification was denied by the Local Board, another appeal was taken and on September 9, 1970, the Appeal Board rendered its decision to continue defendant's I–A classification.[1] (File p. 110). On January 19, 1971, defendant's request for a

---

1. Although defendant later requested deferment on the grounds of hardship, it is not necessary for this court to determine the merits of that request.

transfer from Local Board No. 4, Pineville, Kentucky, to Local Board No. 54, Bethesda, Maryland, was approved. (File p. 87). On May 10, 1971, defendant reported for induction into the Armed Forces but then refused induction. (File p. 32).

The scope of judicial review of a selective service classification is exceedingly narrow, the sole question being whether a "basis in fact" exists for the classification given. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946). It is settled that the burden of establishing a right to a conscientious objector classification rests on the registrant. Dickinson v. United States, 346 U.S. 389, 395, 74 S. Ct. 152, 98 L.Ed. 132 (1953); United States v. Wood, 454 F.2d 765 (4th Cir. 1972); United States v. Washington, 392 F.2d 37 (6th Cir. 1968).

Although the question has been raised as to whether the prevailing law in the Fourth Circuit (Maryland being the place of refusal of induction) or the prevailing law in the Sixth Circuit (Kentucky being the location of defendant's original Local Board where he was refused the I–O classification) should govern in this case, we find this question merely academic since both circuits are in accord with respect to the law regarding conscientious objector classification.

The "basis in fact" test, as applied in the Fourth and Sixth Circuits, is composed of two steps: (1) The reviewing court must determine on the basis of the registrant's submitted Selective Service Form 150 and supplemental material whether the registrant has made out a *prima facie* case for entitlement to classification as a conscientious objector, and 2) After finding that a *prima facie* case has been established, the reviewing court must then determine whether the registrant's administrative file contains any basis in fact for the Local Board's determination that he should not receive that classification. United States v. Wood, *supra*; United States v. O'Bryan, 450 F.2d 365 (6th Cir. 1971); United States v. Broyles, 423 F.2d 1299 (4th Cir. 1970); United States v. James, 417 F.2d 826 (4th Cir. 1969); United States v. Washington, *supra*. It is also settled in both the Fourth and the Sixth Circuits that the Local Board in passing on a registrant's claim of conscientious objection must reach any conclusion of insincerity, not by speculation or hunch, but by a rational process which includes stating the basis of its conclusions and the *reasons therefor*. Peckat v. Lutz, 451 F.2d 366, 368 (4th Cir. 1971), United States v. O'Bryan, *supra*. Therefore, the record must contain some statement of the board's reasons for disbelief of the registrant where sincerity is the principal issue, if the denial of I–O classification is to be upheld upon judicial review. United States v. Washington, *supra*, 392 F.2d at p. 39. As noted by the Second Circuit:

"[T]o sustain the denial of a claim on a mere *ipse dixit* lack of sincerity from * * * the hearing officer would create serious possibilities of abuse."

United States v. Corliss, 280 F.2d 808, 814 (1960); *Accord*, Peckat v. Lutz, *supra*, 451 F.2d at p. 368; United States v. O'Bryan, *supra*, 450 F.2d at p. 370.

Thus the reason behind the requirement that the local board articulate its reasons for denial of conscientious objector status is to ensure meaningful judicial review of administrative action by requiring that the court have some idea of the basis for the decision by the local board. Scott v. Commanding Officer, 431 F.2d 1132 (3rd Cir. 1970). Without such articulation, there is no indication as to *what* the board did not believe concerning defendant's beliefs which, if true, could qualify him as a conscientious objector. As Judge Winter stated in United States v. Broyles, 423 F.2d 1299, 1304 (4th Cir. 1970), "[w]here the board fails to disclose the basis for its decision, we risk blind endorsement of a mistake of law."

However, there is a corollary to the "basis in fact" test set forth above which has been recently stated by the Fourth Circuit:

"Unless, by his application, along with his supporting data, the registrant establishes a *prima facie* right to such classification, the Local Board may deny the application and need not set forth any grounds or reasons for the denial. In other words, the requirement that the Board articulate its reasons for denial is dependent upon the registrant establishing a prima facie claim." (footnote omitted). United States v. Wood, *supra*, 454 F.2d at 767.

Recently, the Supreme Court has reiterated the threefold test for determining conscientious objector status:

"In order to qualify for classification as a conscientious objector, a registrant must satisfy three basic tests. He must show that he is conscientiously opposed to war in any form. Gillette v. United States, 401 U.S. 437, [91 S.Ct. 828, 28 L.Ed.2d 168]. He must show that this opposition is based upon religious training and belief, as the term has been construed in our decisions. United States v. Seeger, 380 U.S. 163, [85 S.Ct. 850, 13 L. Ed.2d 733]; Welsh v. United States, 398 U.S. 333, [90 S.Ct. 1792, 26 L.Ed. 2d 308]. And he must show that this objection is sincere. Witmer v. United States, 348 U.S. 375, [75 S.Ct. 392, 99 L.Ed. 428]. In applying these tests, the Selective Service System must be concerned with the registrant as an individual, not with its own interpretation of the dogma of the religious sect, if any, to which he may belong. United States v. Seeger, *supra*; Gillette v. United States, *supra*; Williams v. United States, 5 Cir., 216 F. 2d 350, 352." Clay v. United States, 403 U.S. 698, 700, 91 S.Ct. 2068, 2070, 29 L.Ed.2d 810 (1972).

The first issue that this court must determine, therefore, is whether or not Mr. Philpot has made out a *prima facie* case for entitlement to classification as a conscientious objector based on his S. S. Form 150 and the supplemental material submitted therewith.

■■ In a 19-page memorandum attached to his S.S. Form 150, defendant outlined his religious and moral beliefs based on biblical teachings and his interpretation of them. At one point defendant stated:

"These statements indicate that the way to sit on the right hand of God is by helping other and/or by refraining from hurting other people. (sic) I do not feel that killing or supporting and (sic) institution which kills, harms, or restricts a person in any way, will help some other human being. The question is who is hurt the most—the person who is killed or the person who kills and/or supports the institution which kills and/or trains to kill. . . . I feel the most harm will come to the person who kills. If my country wants me to kill, I will say no, [but if there is any way I can help my country I will do what I can.]"

Other statements in this memorandum indicate, perhaps inartfully, Philpot's opposition to war and the institutions which he contends support war and the taking of human life. His memorandum indicates also that Philpot is conscientiously opposed to war in any form, and that his views resulted from his religious training and belief, especially the teachings of Christ, and not from essentially political, sociological or philosophical views or a merely personal code. United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965). Although there are no supporting letters from relatives, friends or clergymen attached to the S.S. Form 150, supporting Philpot's sincerity as to his beliefs, neither is there any affirmative evidence contained in his memorandum which as a matter of law would establish a lack of sincerity on the part of Philpot. Undoubtedly Philpot's claim would be bolstered by supporting statements attesting to his sincerity, but we believe that

the lack of such statements is not fatal to a conscientious objector claim as a matter of law. Based on the statements of Philpot contained in his memorandum submitted with his S.S. Form 150, we find that he did establish a *prima facie* case for classification as a conscientious objector.

Having found that Philpot did establish a *prima facie* case for classification as a conscientious objector, we must now determine whether his administrative file contains any basis in fact for the Local Board's determination that he should not receive that classification.

■ As previously noted the only reasons given by the Local Board in denying the I–O classification to Philpot (and the only reasons that appear in the file) were that the Board did not believe the registrant sincere in his belief and that it believed he was "trying everything in the book to stay out of the armed forces." (File p. 9). The Local Board gave no facts or reasons whatsoever in support of its conclusions which are in any way inconsistent with Philpot's I–O claim. The mere fact that Philpot's conscientious objector claim did not crystallize until his II–S classification was changed to a I–A classification would not constitute a basis in fact for finding his conscientious objector claim was insincere. United States v. O'Bryan, *supra*, 450 F.2d at p. 370; United States v. Broyles, *supra*, 423 F.2d at pp. 1305–1306; *cf.* Ehlert v. United States, 402 U.S. 99, 103–104, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971). And as this court recently has stated:

"[E]ven where the applicant has appeared personally before the board which has the responsibility of making a determination of whether or not a valid basis exists for a claim of conscientious objection and the board thereby has had the opportunity to weigh the credibility and demeanor of the applicant, the courts, in applying the 'basis in fact' test, have refused to let stand decisions in which the board has dismissed the claim solely on the basis of suspicion and speculation and in the face of uncontroverted evidence supporting the claim. Dickinson v. United States, 346 U.S. 389, 396–397, 74 S.Ct. 152, 98 L.Ed. 132 (1953); Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955). There must be a 'rational' basis in fact for the decision of the board, not merely speculative possibilities. United States v. James, 417 F.2d 826 (4th Cir. 1969)." Nachand v. Seaman, 328 F.Supp. 753, 757 (D.Md.1971).

Thus as was stated by the Sixth Circuit in *O'Bryan*, "[w]hile it is theoretically possible that the Local Board's determination was based on permissible grounds (though search of the record reveals no objective basis for such a determination), it is impossible, in light of the Board's silence as to its reasons for the determination, to do more than speculate as to what such grounds might be. As we have stated above, a court cannot properly perform the function of judicial review mandated in *Estep, supra*, in such a case." 450 F.2d at 373.

■ Accordingly, because the Local Board failed to set forth its reasons for the conclusions it reached, there is no basis in fact contained in the record for its determinations, nor has the court's review of the registrant's administrative file revealed material which as a matter of law would preclude classification of the defendant as a conscientious objector. Accordingly, it is this 31st of July, 1972, by the United States District Court for the District of Maryland,

Ordered that the motion to dismiss by defendant Philpot be, and the same is hereby, granted.