**UNITED STATES of America, Plaintiff,**

v.

**David Russell PRICE, Defendant.**

**No. G–141–71 Cr.**

United States District Court,
W. D. Michigan, S. D.

Nov. 14, 1972.

John Milanowski, Asst. Atty. Gen., Grand Rapids, Mich., for plaintiff.

Kenneth S. Jacobs, Villa Park, Ill., for defendant.

## OPINION AND ORDER

FOX, Chief Judge.

Defendant in this criminal action, David Russell Price, is charged by indictment with failure to perform civilian alternative service as a conscientious objector, in violation of 50 App. United States Code, Section 462. Presently before the court is defendant's motion to dismiss the indictment.

On November 12, 1968, David Price was classified 2–S by his local board as a full time student. The following summer the board wrote to Mr. Price inquiring whether he would again be a student during the impending school year. In response, Mr. Price did not attempt to establish continued student status, but did return a letter requesting a IV–D ministerial exemption. In this letter, he explained that he had been studying with the Jehovah's Witnesses during the past year and expected to be ordained shortly as a minister of that faith. He further stated that he spent approximately 70 hours per month in religious activities plus additional time in study. He promised to submit supporting affidavits, but never did, except for one letter from a Mr. Kenneth Woodward which included no reference to ministerial activity.

Thereafter, on October 21, 1969, defendant was reclassified 1–A. Defendant appealed on November 3, 1969, again asserting that the ministry was his "main occupation." He was granted a personal appearance before the local board on December 2, 1969, and was again classified 1–A. On December 18, 1969, Mr. Price sought further appeal and was mailed an SSS Form 150 (application for conscientious objector). In his letter of December 18, defendant elaborated on his claim to a ministerial exemption. He restated the Biblical support for his religious beliefs and explained that he spent five hours per week at congregational meetings, four

hours per week in a door-to-door ministry and fourteen to twenty-one hours per week in personal study. He indicated that he occasionally served as a Vacation Pioneer, not a Regular Pioneer, "whenever my job allows." His reference was to his secular employment as a custodian, which, by his own statement, involved a full 40 hour per week commitment.

On January 15, following the board's receipt of defendant's completed Form 150, reopening was denied. Later, however, on February 13, 1970, defendant was reclassified 1–O. Subsequent appeals failed to alter that status, and defendant was ordered to report for civilian work duty on October 19, 1970. The instant indictment followed.

By his motion to dismiss, defendant argues that since the board never stated reasons for its refusal to grant a IV–D classification, judicial review is impossible and the indictment must therefore be overturned. The government responds that in this case no statement of reasons was necessary, since defendant failed to ever present the board with a prima facie claim for exemption.

The "statement of reasons" rule has found expression in this circuit in the landmark case of United States v. O'Bryan, 450 F.2d 365 (6th Cir. 1971). In that case, the court reviewed the nature and limited scope of judicial inquiry in selective service cases. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946). The court then proceeded to carefully analyze what the "basis in fact" test laid down in Estep required of a reviewing court.

> "The 'basis in fact' test actually involves two steps. At the threshold, the reviewing court must determine, on the basis of the registrant's submitted . . . material, whether the registrant has made out a prima facie case . . . .
>
> Where it is clear that a prima facie case was established, we conclude that in conscientious objector cases, it is essential to the validity of an order to

report that the board state its basis of decision and the reasons therefor . . . . " United States v. O'Bryan, supra, 450 F.2d at 368, 371.

The basis of the O'Bryan decision is that since a court is not supposed to weigh factual matter in a selective service file, it cannot intelligently review the record to perform the "basis in fact" test without a statement of reasons from the board to use as a point of reference. In other words, the court cannot weigh one fact against another, so it must compare the facts of record with the reason given by the board in explanation of its factual determination in order to ascertain whether the board committed a mistake of law or in some other way exceeded its jurisdiction in acting as it did. It is this jurisdictional question which the Supreme Court identified in Estep, supra, as the sole justification for judicial review.

■ Having thus understood the basis of the statement of reasons requirement set forth in O'Bryan, it becomes clear why the court in that case made the establishment of a prima facie claim a prerequisite to the board's obligation to record reasons for its action. Once a prima facie claim is made, the requested classification must be granted unless countervailing evidence mitigates against the claimant. Hence, the denial of a requested classification following the filing of a prima facie claim necessarily involves the kind of factual weighing and deliberation which the board alone is empowered to do and which triggers the court's need for an explanation of the board's decision. In contrast, however, when a court is asked to review a record to determine whether a registrant successfully made a prima facie claim in the first instance, no evaluation or weighing of facts is required. The necessary point of reference against which to judge the factual record is provided by law, by the statutory and regulatory conditions for any given classification. Hence, all the court need do to determine whether a prima facie case

has been established is assume as true and accurate all allegations and evidence submitted by the registrant and then determine whether the requested classification could be based thereon. No statement by the board that prima facie deficiencies exist is necessary for the court to make this determination. To impose a requirement that the board issue such a statement would, therefore, only unreasonably fetter an already heavily encumbered bureaucratic system.[1]

The principle that a local board need not state reasons for denial of a classification unless a registrant has established a prima facie case is not only incorporated in the Sixth Circuit ruling in United States v. O'Bryan, supra, but is also explicitly expressed in two Ninth Circuit decisions involving the IV–D classification. United States v. Pryor, 448 F.2d 1273 (9th Cir. 1971); United States v. Campbell, 439 F.2d 1087 (9th Cir. 1971).

> "Since a prima facie case had not been presented, the board was not required to state reasons for denying the IV–D classification." United States v. Pryor, supra, 448 F.2d at 1274.

In support of his argument that the failure of the board to give reasons for its refusal to grant him a IV–D exemption renders the indictment defective, defendant raises this court's decision in United States v. Beckham, 330 F.Supp. 1099 (W.D.Mich.1971), as well as the case upon which Beckham principally relied, Clay v. United States, 403 U.S. 698, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971). These cases, however, and the principles controlling their decision, differ fundamentally from the case at bar. Where strong affirmative indications appear on the face of a selective service record

that a mistake of law has produced the board's factual decision, Clay and Beckham stand for the proposition that a specific statement of sound reasons must accompany that decision, if it is to be upheld.

In Clay, two of three items of advice given to the board by the Justice Department were concededly erroneous as a matter of law. Since neither the local nor the appeal board identified a sound basis of its classification decision, that decision was overturned by the court. Similarly, in Beckham, the local board itself revealed, via a letter to the defendant three days prior to its decision to deny his request for a IV–D exemption, that it held a fundamental misconception of the law applicable to the IV–D classification. Again, in the absence of a statement of reasons curing the taint thus raised on the record by the board, the indictment was dismissed.

In this case, no indication whatever appears on the face of the record that improper legal standards were applied to warp a factual decision by the board. Indeed, the relevant focus of inquiry at this stage of the proceedings is a primarily legal, not factual, issue—whether defendant successfully presented a prima facie claim to his local board. The important principle expressed in Clay v. United States, supra, and United States v. Beckham, supra, is simply inapplicable in this case, where no basis has been established for a fear of abuse by the board of its fact-finding function. Properly read, Clay is not really a case refining the "basis in fact" standard of review applicable in the ordinary selective service criminal prosecution.

> "The issue (whether there was a 'basis in fact' to support the board's decision) is one that need not be resolved

---

1. Selective sevice law has grown so complex in recent years that even an experienced lawyer new to the field finds it necessary to spend many hours preparing an effective representation. It is essential, therefore, that procedural requirements and other legal demands of the lay members of local boards be trimmed of unnecessary impositions. If the selective service system is to function, board members must be as free as possible to make effective decisions, subject only to those limitations of procedure required to safeguard fundamental constitutional rights.

in this case. For we have concluded that even if the Government's position on this question is correct, the conviction before us must still be set aside for another quite independent reason." 403 U.S. at 701, 91 S.Ct. at 2070.

Rather, Clay is a case addressing the more fundamental legal question of how the courts must respond when confronted with positive evidence that board action was tainted by misapplication of the law. In such a context of likely official misfeasance, analysis of the sufficiency of a prima facie showing was deemed by the court to be and is unnecessary and inappropriate. Absent such a tainted context, however, the standard review procedure outlined in Estep v. United States, supra, as refined in United States by O'Bryan, supra, must govern.

 Turning, then, to the substance of defendant's submissions to the board in support of his claim to a ministerial exemption, the court must find that defendant unquestionably failed, as a matter of law, to establish a prima facie case which could support such a classification. A registrant's duty to come forward with such a showing was firmly recognized by the Supreme Court in the landmark case dealing with the ministerial exemption, Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L. Ed. 132 (1953).

> "The ministerial exemption, as was pointed out in the Senate Report accompanying the 1948 Act, 'is a narrow one, intended for the leaders of the various religious faiths and not for the members generally.' . . . And since the ministerial exemption is a matter of legislative grace, the selective service registrant bears the burden of clearly establishing a right to the exemption." (At pages 394–395, 74 S.Ct. at page 156.)

The elements established by statute as conditions to entitlement to ministerial exemption are: (1) the registrant must regularly preach and teach the principles of his sect and conduct public worship; (2) he must engage in such activities as his vocation, not as an avocation; and (3) he must be a leader as distinguished from a congregant, a shepherd rather than mere devoted member of the flock. 50 App.U.S.C. § 466(g).

Defendant's selective service file reflects that he not only failed to sufficiently document his ministerial activities but, in fact, conceded points necessarily inconsistent with the statutory criteria. Defendant's letters to his board reveal no more than a firm religious opposition to war and commitment to evangelism. He alleged active preaching of the gospel but never claimed to actually conduct public worship or to regularly fill a leadership capacity as defined by statute. Although asserting his commitment to religion as his primary activity, he acknowledged in writing during the administrative appellate process that he worked in a secular job forty hours per week and that he could therefore merely hope to "take part in the vacation pioneering whenever my job allows." (Defendant's letter to board of December 18, 1969.) In light of these facts as presented by defendant or, more accurately, in light of defendant's concomitant failure to demonstrate full time vocational ministerial activities, this court can only conclude that he failed to make a prima facie showing that he "meets the vital test of regularly, as a vocation, teaching and preaching the principles of his sect and conducting public worship." Dickinson v. United States, supra, at 395, 74 S.Ct. at 157.

While not very ardently contending that he did establish a prima facie claim, defendant argues that the court must infer that the board closed this issue in defendant's favor by "reopening" his classification for purposes of evaluating his ministerial status. This argument follows from the regulatory provision that a board must not reopen before first determining that a prima facie

claim has been presented. 32 CFR § 1625.2. While the legal point thus raised is an interesting one, it is simply factually inapplicable to the case at bar. There is no indication in this record that the board ever "reopened" defendant's file in order to examine his claim to a IV–D classification. On October 21, 1969, defendant was reclassified 1–A, his previous classification having been 2–S. This reclassification was prompted by facts quite apart from religious considerations. Defendant had discontinued his student status and was immediately reclassified following the board's determination to this effect. At the very least, there is certainly no basis for the court to assume that defendant's claim to ministerial exemption played a role in this "reopening." Defendant's argument might be factually applicable had he been classified 1–A prior to October 21, 1969 and then been again classified 1–A on that date following his application for a IV–D exempt status, but such was simply not the case in this instance.

A selective service registrant has the burden of proof that his full time vocation is as a recognized leader of a religious congregation. Reduced to its essence, the governing proposition in this case is that when he fails to meet this burden even to the extent of making a prima facie showing, his local board may deny him a IV–D classification without explanation, since the court may intelligently apply the legal standard and review the sufficiency of the registrant's prima facie submissions without the assistance of a statement of reasons from the board. In this case, the defendant never presented his local board with any information which indicated that he was anything more than a faithful follower. His application for exemption as a minister was therefore properly denied.

> "Certainly all members of a religious organization or sect are not entitled to the exemption by reason of their membership, even though in their be-

lief each is a minister." Dickinson v. United States, supra, at 394, 74 S.Ct. at 156.

Defendant's motion to dismiss the indictment must be and is hereby denied.

It is so ordered.