UNITED STATES of America,
Appellee,

v.

Craig Lee FULLER, Appellant.

No. 73–2113.

United States Court of Appeals,
Sixth Circuit.

Argued April 9, 1974.

Decided May 21, 1974.

Frederick Cohn, New York City, on brief, for appellant.

Eldon L. Webb, Asst. U. S. Atty., for appellee; Eugene E. Siler, Jr., U. S. Atty., Lexington, Ky., on brief.

Before EDWARDS, CELEBREZZE and LIVELY, Circuit Judges.

LIVELY, Circuit Judge.

After waiving trial by jury the defendant was found guilty of failure to submit to induction into the armed forces of the United States in violation of 50 U.S.C. App. § 462. His five-year sentence was suspended, and he was placed on probation for 25 months on condition that he accept employment for 24 months at a civilian hospital. The defendant accepted probation on this condition.

Upon registering for the draft Fuller received a student deferment, but this was lost when he dropped out of college. He made several attempts to establish his disqualification for military service on grounds of physical disability, submitting medical statements to his local board which indicated that he was suffering from a weakness of the feet, nasal congestion and chronic nasal allergy. He also claimed a psychiatric disability, which will be discussed more fully in this opinion. Each time he was examined, defendant was found acceptable for military service.

On February 27, 1969 defendant filed with his local board Form 150 seeking a I–O conscientious objector classification.

In this form he claimed exemption from both combatant and non-combatant training and service in the armed forces, but indicated a willingness to perform civilian alternative service if called. A portion of the form is headed Series II —Religious Training and Belief. Question one requires the applicant to "Describe the nature of your belief which is the basis of your claim and state why you consider it to be based on religious training and belief." Defendant's complete answer was:

I am "devoted to" Humanity; to life. I possess an intense "affection for" all living things. These, according to *The Shorter Oxford English Dictionary*, are the to [sic] valid definitions of religion.

Question two under Series II requires the applicant to "Explain how, when and from whom or from what source you received the religious training and acquired the religious belief which is the basis of your claim." Defendant answered as follows:

I attended church in Waverly Ohio and in Oregon and found a condition of hippocracy in existance so strong it would have stiffled even the most self evident truths, truths which I have required [sic] from men like Edward Carlos and Bruce Sodervick who are proffessers at the University. (Spelling and punctuation as in original.)

The records of the local board indicate that the Form 150 of defendant was reviewed on March 11, 1969. Two members signed a notation that "The statements therein are not considered as warranting a change of classification from I–A to I–O. Accordingly the classification is again confirmed as I–A." The same date the executive secretary of the board entered the following minute: "SSS Form 150 reviewed. Board does not feel that there are any grounds for a conscientious objector's classification. Classification reopened and registrant again classified I–A." Thereafter the defendant was granted a personal appearance before the board and was notified to appear on May 13, 1969. The defendant did not appear, but the board reviewed the file and the classification was again confirmed as I–A in accordance with the decision of March 11, 1969. The local board forwarded the file to Ohio Selective Service headquarters and on July 9, 1969 the Appeal Board affirmed the denial of exemption without any further statement of the reason therefor.

The district court held that there was no violation of defendant's rights in the refusal to reclassify him as a conscientious objector. It found that the statements contained in defendant's Form 150 were not sufficient to justify granting such a classification and that the request was properly considered and the refusal was for sufficient, stated reasons. Both parties cite United States v. O'Bryan, 450 F.2d 365 (6th Cir. 1971). In the *O'Bryan* opinion this court noted that the scope of review applicable to Selective Service cases is among the most narrow known, and that reviewing courts may not sit as "super boards." The question before a court reviewing the actions of a draft board is whether there is a basis in fact for the determination made by the board. The first, or threshold step, in determining whether there is a basis in fact for a board decision is for the reviewing court to "determine, on the basis of the registrant's submitted Selective Service Form 150 and supplemental material, whether the registrant has made out a prima facie case for entitlement to classification as a conscientious objector." 450 F.2d at 368. In *O'Bryan*, neither the government nor the district court contended that the registrant had failed to make out a prima facie case. Independent examination of the Selective Service file confirmed that a prima facie case for conscientious objector classification had been made out and the court then reached the second step which required it to consider whether the statement of the board denying the classification was sufficient. The court held that where a local board gives no statement of rea-

sons for rejecting an application which presents to it a prima facie case for conscientious objector classification it is impossible for a reviewing court to determine whether the local board exceeded its jurisdiction in making the decision. When no such statement is made a local board has failed to demonstrate a basis in fact for its determination, and a conviction based upon refusal to submit to induction must be reversed.

■ Our first task then is to determine whether the defendant made out a prima facie case for I–O classification. In Clay v. United States, 403 U.S. 698, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971), the Supreme Court set forth three tests which must be satisfied by a draft registrant in order to qualify for conscientious objector classification: (1) "He must show that he is conscientiously opposed to war in any form." (2) "He must show that this opposition is based upon religious training and belief, as the term has been construed in our decisions." (3) "And he must show that this objection is sincere." 403 U.S. at 700. The statements contained on Craig Fuller's Form 150 do not directly relate his conscientious opposition to war to any religious training and belief. Although in answer to question number four under Series II Fuller claims to have expressed his views orally in class and in a theme for English and a lengthy poem written in a fine arts course, neither the theme nor the poem was submitted as a supporting document. Furthermore, neither of the two professors referred to by Fuller as supplying his "truths," and given as references, filed any supporting information with the board.

We recognize that the statement of an applicant for reclassification is not required to be written in the language approved by the courts or accepted among theologians. United States v. O'Bryan, supra, at 372. However, there are significant differences between the statement of Fuller and that of O'Bryan as set forth at 450 F.2d 368 n. 2. Defendant contends that his statement meets the requirements listed in Clay v. United States, supra, when considered in the light of United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), and Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970). In those two cases the Supreme Court considered conscientious objector claims which were based on convictions acquired from sources other than formal religious training or orthodox religious beliefs. In Seeger, the court provided a test for determining whether an applicant's beliefs are religious within the meaning of the exemption statute as follows:

> The test might be stated in these words: A sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by the God of those admittedly qualifying for the exemption comes within the statutory definition. 380 U.S. at 176.

In Welsh, the applicant denied that his scruples against taking part in wars was based on religious training, but wrote a letter that his beliefs were "certainly religious in the ethical sense." The government conceded that Welsh's beliefs were held with the strength of more traditional religious convictions, but the appeal board could find no religious basis for his beliefs, opinions and convictions. The Supreme Court held that a person is not excluded from conscientious objector exemption because his objection to participation in war is founded upon considerations of public policy or opposition to governmental activities in the fields of domestic or foreign affairs. Welsh stated that he believed the taking of any life was morally wrong, that all human life is valuable and that he would not injure or kill another human being. The plurality opinion of Mr. Justice Black states the requirement of 50 U.S.C.App. § 456(j) in these words:

> That section exempts from military service all those whose consciences, spurred by deeply held moral, ethical, or religious beliefs, would give them

no rest or peace if they allowed themselves to become a part of an instrument of war. 398 U.S. at 344.

Giving full consideration to the Supreme Court opinions in *Seeger* and *Welsh,* we do not believe the statements contained in Fuller's Form 150 made out a prima facie case for conscientious objector classification. He speaks of self evident truths which are stifled by hypocrisy that he found in churches he attended, but does not identify these truths or claim that they fill a place in his life comparable to that of religion in the lives of others. Nor can we infer from anything contained in the application that his devotion to humanity and affection for all living things is based on religious training and belief. In oral argument counsel for the defendant urged us to follow the holdings of two other circuits in recent cases there cited. We have carefully considered these cases and find no disagreement between the principles enunciated therein and those set forth in this opinion. The results were different because the facts were different. In United States v. Hodgins, 485 F.2d 549 (9th Cir. 1973), the statements of the applicant in support of exemption were much more complete and clearly disclosed both the religious and moral foundation of his beliefs. We feel that the Court of Appeals correctly concluded that the statements on Hodgins' Form 150 were sufficient to make a prima facie case. In United States v. Turcotte, 487 F.2d 417 (5th Cir. 1973), there was likewise a clearly stated conscientious opposition to any war derived from religious training and beliefs. We note that the applicant in that case appeared before the local board and answered questions, whereas the applicant in the present case was advised that a personal appearance had been granted but failed to avail himself of this opportunity to explain his beliefs to the board. The statement contained in the applications which were considered by the boards both in United States v. Hodgins, *supra,* and United States v. Turcotte, *supra,* bear a closer resemblance to those considered by this court in United States v. O'Bryan, *supra,* than those under consideration in this case. The defendant did not establish a prima facie right to conscientious objector classification and the local board was not required to set forth its reasons for denying the application. United States v. Wood, 454 F.2d 765 (4th Cir. 1972). The basis in fact for denial is that Fuller failed to satisfy the three basic tests set forth in Clay v. United States, *supra,* and this is implicit in the determination of the local board that the statements in his Form 150 *"are not* considered as warranting a change of classification *from* I–A to I–O." (emphasis original)

The second argument in support of the contention that the application made out a prima facie case for conscientious objector classification is based on the fact that the local board reopened Fuller's file to consider his application. Defendant cites the provisions of 32 CFR § 1625.2(a) which is entitled "When Registrant's Classification May Be Reopened and Considered Anew" and 32 CFR § 1625.4 which is entitled "Refusal to Reopen and Consider Anew Registrant's Classification." He argues that the words, "may reopen" in CFR § 1625.2(a) have been interpreted to mean "shall reopen" when a prima facie case has been presented and that this requires 32 CFR § 1625.4 to be interpreted that the file "shall not" be reopened *unless* a prima facie case has been made. We do not read these two regulations to permit a reopening only after a prima facie case has been presented or to prohibit a reopening in the absence of a prima facie case. The defendant's interpretation of these regulations is not supported by the language in the dissenting opinion of Mr. Justice Douglas in Joseph v. United States, 405 U.S. 1006, 1007, 92 S.Ct. 1274, 1275, 31 L.Ed.2d 473 (1972), as claimed by him. That same dissenting opinion, immediately following the language quoted in his brief, states that "a local board may well have the power to reopen a classification on a lesser showing than a prima facie case." Re-

opening is a matter of substance which carries with it the right of a personal appearance and an administrative appeal. Mulloy v. United States, 398 U.S. 410, 414–415, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970). In conferring these rights a board does not necessarily concede that a prima facie case has been made.

■ The second issue determined by the district court and disputed on appeal is that the defendant was medically acceptable to the United States Army. On April 28, 1969 defendant was interviewed by Dr. R. H. Turcotte, a Massachusetts psychiatrist and on July 17, 1970 he was seen by Dr. Harvey Roy Greenberg, a psychiatrist who practiced in New York City. Defendant was given a new Selective Service physical examination on September 28, 1970 and was referred to Dr. Harold T. Brown, a psychiatrist, for further examination. On October 7, 1970 Dr. Brown examined defendant and filed a consultation report. At the time of this examination, Dr. Brown was informed of defendant's previous consultations with Dr. Turcotte and Dr. Greenberg and had copies of their reports to the local board. After describing the interview and specific complaints of the defendant, Dr. Brown concluded his consultation report with this language:

> Impression: Passive—Aggressive Personality #301.81 He is somewhat depressed but no more so than that sort of personality facing the necessity of doing something he doesn't want to do. His record indicates that he is quite well able to function toward goals requiring planning, clear knowledge of the realities, and sustained effort. I see no psychiatric reason why he could not function in the service if required, although he will resist.

Dr. Turcotte's letter to the board stated that defendant was unsuitable for military service and should be rejected for psychiatric reasons. In his letter, Dr. Greenberg noted that the defendant stated to him that he had had a bad attitude toward authority all of his life and that feelings of apathy and depression had increased following the use of LSD. His letter stated that: "The basic picture is that of a severe psychoneurotic depressive reaction, precipitated by LSD, which is slowly on the mend. He needs professional help, but whether he will accept it is another matter. He is still exquisitely sensitive to stress, has an ulcer to boot, and the last place for a person such as this at this moment is the service. There are probably latent passive aggressive trends in such a man, and the least one would expect would be increasing obstinacy and ineffectiveness and provocation of command were he to be inducted, leading to administrative separation. However, his medical condition at present makes it very likely that under the stress of the military, his depressive symptoms would increase substantially, with the emergence of suicidal trends. I would recommend that he be released from his obligation to serve at this point, and I have strongly urged him to seek psychiatric care."

■ The scope of review of a finding of medical acceptability for military service is limited to a determination of whether there is a basis in fact for such finding. Vasilj v. United States, 425 F.2d 1134 (9th Cir.), cert. denied, 399 U.S. 928, 90 S.Ct. 2245, 26 L.Ed.2d 795 (1970). The basis in fact of the finding that defendant was acceptable for military service is contained in the consultation report of Dr. Brown. Although he classified defendant as a passive-aggressive personality, Dr. Brown found no psychotic indications and noted that the intellectual functions were intact and judgment for practical matters was good. These findings support his conclusion that there was no psychiatric reason to hold defendant unacceptable for military service. The fact that both Dr. Greenberg and Dr. Brown noted passive-aggressive personality traits does not, as contended by the defendant, compel the court to find that Dr. Brown's

conclusion of acceptability may not be relied upon as establishing a basis in fact for the final determination. Defendant has pointed to no arbitrary action or failure to follow prescribed procedures in the finding of acceptability as occurred in United States v. Wilson, 478 F.2d 475 (9th Cir. 1973). No such showing was made in this case, and the defendant in reality is asking the court to accept Dr. Greenberg's findings and conclusions rather than those of Dr. Brown and Dr. Abraham, the physician at the Armed Forces Entrance Examining Station (AFEES) who made the final determination of acceptability. This we are not permitted to do within the narrow confines of review permitted in cases of this type.

Dr. Greenberg was permitted to testify in the district court proceedings. He stated that he had examined the defendant one time on July 17, 1970 and that the examination lasted approximately one hour. The testimony of Dr. Greenberg reveals that he agreed entirely with the diagnosis of Dr. Brown, but disagreed with the conclusion that Fuller was fit to serve. This is precisely the disagreement which was resolved when AFEES had to choose between the expert opinion of Dr. Brown and that of Dr. Greenberg. The testimony of Dr. Greenberg fails to reveal anything more than a disagreement between experts, and falls far short of sustaining defendant's burden of showing that the determination of medical acceptability resulted from arbitrary action or a deficiency in prescribed procedures. United States v. Wilson, *supra*. The defendant also cites United States v. Stockwell, 485 F.2d 700 (1st Cir. 1973). In that case the court found that a draft board failed to review new information submitted by a registrant and that this failure deprived the registrant of his procedural rights. No such failure occurred in this case.

The judgment of the district court is affirmed.